WILKES *et al. v.* KNIGHT *et al.,* receivers (three cases).

1. When this case was formerly before this court (135 *Ga.* 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900), it was held: "If a person subscribes for stock in a corporation [here a bank], and thereupon the company proceeds to do business upon the basis of the stock subscribed, and incurs indebtedness, the subscriber can not, after insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them."

(a) The finding of the auditor, which was approved by the presiding judge, to the effect that the present plaintiffs in error had no right of rescission of their stock subscriptions as against creditors of the bank whose debts were created subsequently to the subscriptions, and which were outstanding and unpaid, was in substantial accord with the ruling above stated, as applied to the evidence.

(b) Whether this general rule might be subject to modification with reference to the rights of any particular creditor by reason of his having participated in the fraud, or for other special cause, need not now be determined.

2. As far as this record shows, the indebtedness incurred by the bank after the making of the subscriptions sought to be canceled by the plaintiffs in error largely exceeded the amount of their subscriptions, whether two items in favor of one Lott, and Lott, city treasurer, were included in the calculation or not. The plaintiffs in error were not entitled to cancellation. The record is so confused and uncertain on the subject of whether the two items above mentioned should be treated as new indebtedness along with other items of indebtedness created by the bank after the subscriptions, or whether the relation of Lott to the bank was such as to prevent him from claiming to occupy the position of a bona fide new creditor, that this question is not now decided, but his status relatively to other creditors and stockholders is left undetermined.

(a) The present case does not arise on a distribution of assets or on a controversy between different depositors, but upon interventions by certain subscribers to stock, seeking to have their subscriptions canceled, and to recover certain amounts paid thereon.

(b) In one of the cases (Neal and Knox), on cross-petition by the receivers seeking to recover on a promissory note, judgment was rendered for $218 as attorney's fees, in addition to the principal and interest of the note. It was conceded by counsel for the defendants in error that this item should be eliminated because the requisite statutory notice for the recovery of attorney's fees was not shown to have been given, and a request was made that they be allowed to write off such item. This request is granted.

SEPTEMBER 23, 1914.

Exceptions to auditor's report. Before Judge Thomas. Ware superior court. July 19, 1913.

The Bank of Waycross made an assignment for the benefit of its creditors, on November 23, 1907. At a later date receivers were appointed. Certain persons intervened, alleging that on July 11, 1907, the bank increased its capital stock, and the intervenors purchased some of the new shares at different times extending to September 3, and that they were induced to take these shares by fraudlent representations; and they sought to have their subscriptions canceled, and in cases where payments had been made they sought to recover such payments. Demurrers to these interventions were sustained, and the interventions were dismissed. In this court the judgments were reversed. *Gress* v. *Knight,* 135 *Ga.* 60 (68 S. E. 834, 31 L. R. A. (N. S.) 900). The issues raised by the interventions were referred to an auditor, who filed a report in each case, two paragraphs of which were as follows: "That the intervenor has no right of rescission of his subscription as against creditors of the Bank of Waycross whose debts were created subsequent to his subscription, and which are outstanding and unpaid." "That the indebtedness of said Bank of Waycross to creditors since the subscription of the intervenor, and which is outstanding and unpaid, aggregating the sum of sixty-five thousand two hundred and one dollars and forty-three cents, as follows:

| | |
|---|---|
| Individual deposits on active accounts | $37,910.94 |
| Individual deposits on inactive accounts | 13,213.89 |
| Individual deposits on savings accounts | 2,760.17 |
| Individual deposits on certificates | 11,316.43 |
| Making a total of such indebtedness | $65,201.43." |

The first of these paragraphs was classified as a ruling of law, and the second as a ruling of fact. Exceptions were filed to the auditor's report, which were overruled, except that the presiding

judge reduced the finding that the amount of the new indebtedness of the bank was $65,201.43, so as to make it read $55,085.00, the court holding that a certificate of deposit which had been included in the computation of the new indebtedness was not properly a part thereof. J. E. Wilkes, Mrs. C. S. Rigsby, and J. F. Neal and P. S. Knox excepted separately. The cases were argued together in this court.

*W. M. Toomer* and *J. C. Reynolds,* for plaintiffs in error.

*Parks & Reed, Wilson, Bennett & Lambdin, John T. Myers,* and *Joseph W. Bennet,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The finding by the auditor as matter of law that each of the intervenors had no right of rescission of his subscription as against creditors of the Bank of Waycross whose debts were created subsequently to his subscription, and which were outstanding and unpaid, as an announcement of a general rule is in accord with the ruling made when the cases were formerly before this court on demurrer. *Gress* v. *Knight,* 135 *Ga.* 60. Whether this general statement is subject to modification with reference to the rights of any particular creditor, by reason of his having participated in the fraud or otherwise, need not now be discussed. When the case was formerly before this court it was on demurrer. It was then held that the facts in regard to any question of laches, estoppel, the existence of indebtedness incurred after the subscription, or like facts bearing on the question of whether the intervenors would be prevented from rescinding their subscriptions, did not appear. In referring to various matters for consideration in determining whether a subscriber to stock in a corporation could set aside his subscription on the ground of fraud after insolvency and the appointment of a receiver, the expression was used, "and whether any considerable amount of corporate indebtedness has been created since the subscription was made, which remains outstanding and unpaid." Much is sought to be made in argument of the expression, "any considerable amount of corporate indebtedness." When this expression is taken in connection with its context, and with the opinion, it seems to be unduly magnified in importance by looking at it through the lens of hope in the search for a loophole of escape from liability. The decision in that case is not, we think, subject to the construction that there must be some large proportion of the debts of the corporation

created after the subscription, in order to prevent its rescission, as to such new creditors. A similar expression used by Judge Thayer in Newton National Bank *v.* Newbegin, 74 Fed. 135 (20 C. C. A. 339, 33 L. R. A. 727), was apparently not thought to have that effect by him in the later case of Lantry *v.* Wallace, 97 Fed. 865 (38 C. C. A. 510).

2. As to the amount of the indebtedness of the bank incurred after these subscriptions were made, two witnesses testified as expert accountants—one for each side,—with the not unusual wide difference and conflict in evidence in such cases. Without going into the details of the calculations of the two, one difference between them arose from the manner in which they dealt with deposits on what were termed "active accounts," that is to say accounts in which there were both deposits and checks at various times. The witness on behalf of the intervenors took the total balance due to depositors on such accounts on September 4, and deducted it from the balance thus due on November 23, leaving a net balance of $5,463.87 as representing the indebtedness on active accounts created after September 4 (which apparently was taken as the date following the last subscription). This method of calculation clearly did not represent the indebtedness on active accounts incurred after September 4. A simple illustration will show this. Suppose that on September 4 one depositor had on deposit $1,000, and between that date and November 23 his deposits aggregated $100. The total amount of his deposits would be $1,100. Suppose that another depositor had only $100 on deposit on September 4, but deposited after that time $1,000. His aggregate credits on deposit account would be $1,100. Suppose that the first depositor drew out his entire deposits of $1,100 after September 4. As to these two depositors the bank would have owed $1,100 on September 4, and exactly the same amount on November 23. If the system of subtracting the aggregate amount due on September 4 from that due on November 23 were adopted as to these depositors, there would be no remaining balance, and therefore no new indebtedness, although the second depositor had put into the bank $1,000 after the subscriptions. So that the amount drawn by one depositor, though it might reach back into the old account, would destroy the right of another depositor who put money into the bank after the increase in the capital stock and the subscriptions by the intervenors. This

can not be correct. This witness estimated the amount of new indebtedness at $7,279.77, or, if two deposits should be deducted therefrom, at $1,449 or $1,450; but it is unnecessary to discuss the details.

The number of shares involved in the three interventions now brought before this court appears to be eighty shares of the par value of $100. The auditor found that the indebtedness incurred after the subscriptions were made aggregated $65,201.43. Exceptions were filed to this finding. The presiding judge overruled the exceptions, except in one particular, holding that a certificate of deposit issued by the bank for $10,116.43, and included in the aggregate amount found by the auditor, should not have been treated as new indebtedness. Accordingly he reduced the statement of the aggregate of new indebtedness to $55,085. In excepting to this finding of the auditor various reasons were assigned to show that it was error. One of these set up that "under the facts the true net indebtedness created after intervenor's subscription, and which related to his right to rescind, was the sum of $7,250.46, which represented new depositors, less such sums of that amount as were deposited by stockholders or directors or officers of said bank who were such prior to or at the time of intervenor's subscription, such sums being $5,829.77, leaving a balance only of $1,449.00 new indebtedness with reference to intervenor's right to rescind. And also 20th finding is therefore incorrect and erroneous in not finding that the aggregate new indebtedness bearing upon the intervenor's right to rescind and affecting it was only the net sum of $1,449." This exception points out no particular stockholders, directors, or officers to whom reference is made. The only evidence in the record bearing on the subject is as follows: In the testimony of the accountant who testified in favor of the plaintiffs in error he said: "I footed up the totals of Mr. Lott personally and as treasurer $5,829.77; take it from $7,279.77 leaves $1,449 ($1,450) according to my calculation; and deducting the balance standing to the credit of these depositors on September 4, 1907, and deducting this balance appearing to the credit of W. Lott, and assuming he was a director of the bank, the net increase of indebtedness to depositors was thirteen hundred and some odd dollars and not $71,000." In a list of indebtedness to active depositors, apparently made by him, occurred two items: one, "Warren Lott, City Treas., $5,795.40;" the other,

"Warren Lott, $526.93." There were other firm names containing that of Lott in this list, but it is impossible to identify the individual members. Another witness testified that "Mr. Lott and Mr. Sharpe were directors." In the auditor's report is contained the following statement: "Counsel for defendants objected to T. E. Rankin giving evidence as to new deposits made by Warren Lott, an officer of the Bank of Waycross, in both his individual capacity and as city treasurer of Waycross, and the witness's opinion that the deposits should be subtracted from what he (Rankin) regarded as the other new indebtedness, on the grounds of being irrelevant and immaterial, and a conclusion on what he was testifying to as facts. Objections sustained." No exception appeared before us to this ruling. If it was meant to rule out all of the evidence above stated of the witness Rankin, the accountant, in regard to the deposits mentioned, then there was hardly enough left on which to predicate the contention now sought to be raised. At any rate, so far as this record shows, the new indebtedness largely exceeded the par value of the stock subscribed, and which the plaintiffs in error sought to have canceled, whether the new indebtedness included the items above mentioned or not. So far, therefore, as we are concerned with the propriety of holding that the plaintiffs in error were not entitled to a decree of cancellation, it would not help them whether these items were included or not in a general summary. In either event the ruling denying their prayer for cancellation as against creditors becoming such after they subscribed would stand.

As will be seen above, the point is so confused and uncertain as to whether Lott as an individual or as a city treasurer should be treated as a bona fide new creditor, and what may be his rights relatively to other creditors or to stockholders in a distribution of the assets of the bank, that it need not be now decided. The proceeding before us is not one to distribute the assets, or an effort to set up any statutory liability. We think it best, under the circumstances, to affirm the judgment, with direction that the judgment declaring the aggregate amount of indebtedness incurred since the subscriptions were made shall not operate as an adjudication of the status of Lott relatively to other creditors or stockholders.

In the case of Neal and Knox, the receivers filed a cross-petition praying a judgment on the note for $1,500 given for a balance due for the stock taken by them. Judgment was rendered against them

on this note for principal, interest, and attorney's fees. It was conceded in the brief of counsel for the defendants in error that the item of attorney's fees, amounting to $218, should be eliminated because the statutory notice was not shown to have been given; and a request was made that they be allowed to write off this item. This request is granted.

*Judgment affirmed in each case, with directions. All the Justices concur.*