[No. 17276.  *En Banc.*  January 3, 1923.]

JOHN P. DUKE, *Supervisor of Banking etc.,*
*Respondent,* v. ALFRED JOHNSON
*et al., Appellants.*[1]

BANKS AND BANKING (1)—LIABILITY OF STOCKHOLDERS—PERSONS
LIABLE.  Const., art. 12, § 11, and Rem. Comp. Stat., § 3242, provid-
ing that "each stockholder" in any banking corporation shall be
liable for all debts of the corporation accruing while they remain
such stockholders to the extent of the par value of their stock in
addition to the amount invested therein, refers to those who are
stockholders at the time of the insolvency of the bank.

SAME (1)—"ACCRUING WHILE THEY REMAIN STOCKHOLDERS."
The word "accruing" in such provision refers to debts that have
accrued, and the engagements and obligations of a bank "accrue"
in this sense when the bank goes into liquidation, giving the provi-
sion an interpretation in accordance with common sense and proper
grammatical construction; since otherwise it would be unworkable.

SAME (3)—ACTIONS—PLEADING—AFFIRMATIVE DEFENSE.  In an
action upon the double liability of stockholders in a bank, an affirma-
tive defense that the supervisor acted arbitrarily and without suffi-
cient facts in determining that the liabilities exceeded the assets adds
nothing to the issues raised by the denials.

SAME (3)—ACTIONS—DEFENSES—FRAUD OF BANK.  It is no de-
fense to an action upon the double liability of a stockholder in a
bank that defendant was induced to purchase the stock by the
fraudulent representations of the bank and its officers.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for
Grays Harbor county, Abel, J., entered April 15, 1922,
upon findings in favor of the plaintiff, in an action to
recover upon the superadded liability of stockholders
in an insolvent bank.  Affirmed.

*Gordon & Nolte* and *Richards, Fontaine & Gilbert,*
for appellants.

*Guy E. Kelly, Thomas MacMahon,* and *F. D. Oakley,*
for respondent.

*W. V. Tanner* and *John P. Garvin, amici curiae.*

[1]Reported in 211 Pac. 710.

MACKINTOSH, J.—The Scandinavian American Bank of Tacoma is a banking corporation, organized and existing under the laws of the state of Washington. The present record does not show the date of its original incorporation, but enough appears to show that, for a number of years prior to January 15, 1921, it had existence and was engaged in a general banking business. Originally, it was organized with a capital stock of four hundred thousand dollars, divided into shares of the par value of one hundred dollars each. Sometime in the year 1919, the capital stock of the bank was increased to one million dollars, and additional shares were issued for the amount of the increase, which likewise had a par value of one hundred dollars each. These additional shares were put on sale at a price of one hundred twenty-five dollars per share, and Alfred Johnson and Augusta Marie Johnson became the purchasers from the bank of eighty shares of such stock, at the prices at which they were offered for sale; purchasing forty shares on April 12, 1920, and forty shares on July 9, 1920.

The bank thereafter was found to be insolvent, and on January 15, 1921, was taken into possession by the state officer now known as the supervisor of banking, for liquidation. This officer, shortly after taking possession of the bank, ascertained and determined the debts and liabilities and the assets of the bank; finding the former to be "as far as the same were known," $5,344,731, and finding the latter to be of a value less than $3,200,000. The officer further determined that it was necessary, in order to meet the difference between the debts and liabilities, to assess the shareholders of the bank upon their superadded liability created by the constitution to the par value of the shares, and, as of date March 1, 1921, made such an assessment. The amount assessed against the shares

of Alfred Johnson and Augusta Marie Johnson was eight thousand dollars. This sum they refused to pay, and the present action was begun to recover the same. Judgment went for the supervisor in the court below, and the defendants Johnson appeal.

To the complaint of the supervisor, which embodied in substance the foregoing recitals, the appellants interposed a motion to make more definite and certain. This motion being overruled, they demurred for want of sufficient facts, which was also overruled. They then answered, denying the material allegations of the complaint, and setting up two affirmative defenses. With the answer, they served interrogatories for the discovery of facts and documents deemed by them material to the support of their defense to the action. These interrogatories the court struck, upon motion of the supervisor. Error is assigned upon these several rulings, but we think the assignments need no separate consideration. It is enough to say that by them the appellants have preserved in the record the controlling question upon which they rely for reversal, and that the determination of this question will determine how far and in what particulars the court erred in its several rulings.

The question suggested involves the construction of the laws relating to banking. Article XII, § 11, of the constitution provides:

"Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

This provision of the constitution has also been enacted into statute by the legislature, the language of the statute conforming substantially to the language of the constitution. Rem. Comp. Stat., § 3242.

The difference between the parties is over the amount of the liability of the appellants under these provisions of the constitution and statute. It is the appellants' contention that they are liable equally and ratably with other stockholders of the bank for those contracts, debts and engagements of the bank, and for those contracts, debts and engagements of the bank only, which were entered into, incurred, or undertaken by the bank during the time they remained stockholders of the bank, and not for those which were entered into, incurred or undertaken by the bank prior to that time; while it is the contention of the supervisor that they are liable for all contracts, debts and engagements of the bank, regardless of the time the bank became liable therefor.

The question here presented is not a new one in this court. It was first before the court in the early case of *Shuey v. Holmes,* 21 Wash. 223, 57 Pac. 818. In that case, it appeared that the Seattle Savings Bank was incorporated on June 13, 1891; that, on January 12, 1897, it was, at the suit of a creditor, adjudged insolvent and a receiver appointed to liquidate its affairs. It further appeared that one Alice L. Holmes had become a stockholder of the bank on July 1, 1891, and had remained such down to the time of the adjudication of insolvency; that, subsequent to the insolvency, in proceedings had in the court appointing the receiver, it was found that the assets of the bank were insufficient to meet its obligations, and that it was necessary, in order to make up the deficiency, to levy an assessment upon the stockholders of the bank; and that it was thereupon adjudged

" ' . . . that each, all and every of the stockholders . . . equally and ratably . . . be and hereby are assessed on their statutory liability as such stockholders to the amount of forty-eight per cent of the par value of the capital stock of said bank held by each of the stockholders thereof respectively *as shown by the books of said Seattle Savings Bank on January 11, 1897.'* ''

Demand was thereafter made upon Mrs. Holmes for the amount of the assessment against her, which she refused to pay. The action was to recover the amount of the assessment, and judgment went in Mrs. Holmes' favor. On the appeal of the receiver, this court, after quoting the salient parts of the constitutional provision above referred to, used the following language:

"The judgment of the lower court was right, for the simple reason that it does not appear from the statement or from anything contained in the record, neither was it alleged in the complaint, that the whole or any part of the indebtedness of the bank was incurred or created at any time while the respondent was a stockholder of the bank. It is evident that the theory upon which the receiver proceeded was that all stockholders of the bank at the date when its insolvency was adjudged and a receiver appointed, viz., January 7, 1897, were liable, without regard to whether they were such stockholders at the time when the indebtedness arose. This was a mistaken theory and nothing is needed to demonstrate the mistake, other than the plain language of the constitutional provision just quoted. This superadded liability of the stockholder which exists by virtue of the statute and constitution is personal, and does not follow the stock. The obligation rests on the stockholder, not on the stock. But learned counsel for the appellant urge that as the record shows the bank was incorporated on June 13, 1891, and the respondent became a stockholder July 1, 1891, it is to be presumed that the indebtedness was incurred after and not before, she acquired her shares. We can

indulge in no such presumption. The burden was upon the plaintiff. The matter was susceptible of demonstration. Under such circumstances, presumption will not, and ought not to be, indulged in. Counsel is, we think, also mistaken in assuming that this is matter which the respondent was required to establish in defense. To refute this assumption, it is only necessary to recur again to the constitutional provision which creates the liability upon which the right of action is grounded."

The question was again before us in the somewhat recent case of *Fremont State Bank v. Vincent*, 112 Wash. 493, 192 Pac. 975, where the case of *Shuey v. Holmes, supra*, is cited, and the foregoing excerpt from the opinion quoted with approval.

These cases, there can be no doubt, determine the question in dispute contrary to the contention of the supervisor. Indeed, this much is conceded by his learned counsel, but they (counsel) contend that the conclusion drawn by the cases is violative of the language of the constitutional provision, is contrary to its purpose, is inconsistent with other of our cases on the same subject-matter, and thus wrong in principle, and should be overruled.

The essential parts of § 11 which require construction are,

"Each stockholder of any banking . . . corporation . . . shall be . . . liable . . . for all contracts, debts and engagements of such corporation . . . accruing while they remain such stockholders . . . at the par value thereof . . ."

Admitting the ambiguity of this language, the intent of the framers of the constitution in the insertion of this provision must be determined. The effort must be to give full force and effect to each word in the provision. The intent is to be gathered from the language of the provision, from a consideration of the

purposes which called for its insertion in the constitution, and from a consideration of the effects which would result from differing interpretations.

Attention is first attracted to the phrase "every stockholder." Ordinarily, this would mean the person who was then holder of stock and could not appropriately be applied to persons who had at one time been stockholders and whose ownership had ceased through transfer or other disposition of the stock. If it had been the intention to impress liability not only on present stockholders, but on those who had at any time been stockholders, more appropriate language for that purpose would have been chosen. Committed as we are, as will appear later in reference to the adjudications of this court, to the doctrine that the liability imposed by this constitutional provision is secondary and arises only from the insolvency of the bank, it must perforce follow that, where this provision refers to stockholders, it refers to those who are bona fide holders of stock at the time of the insolvency. The provision intended to and does mean, so far as this portion of it is concerned, that every person who is a stockholder of any banking corporation at the time of its insolvency shall be liable for all contracts, debts and engagements of such corporation.

It next becomes necessary to consider the succeeding phrase "accruing while they remain such stockholders." It may be conceded that, in the interpretation of constitutional and statutory provisions, it is not necessary to always pay critical heed to technical grammatical rules; while it may be admitted, at the same time, that some weight should be given to such rules and an effort should be made to construe the language in accordance with those rules rather than contrary to them. Like other experts, grammarians are capable of substantiating their own peculiar

theories, which result quite differently from the ordinary and accepted conclusions of the inexpert. As we read the phrase "accruing while they remain such stockholders," as it appears in the constitutional provision, it is subject to two interpretations. If it should appear that, considering the effect of one interpretation, it would produce results unfitted to the condition to which the provision was manifestly addressed, then it would seem that the other interpretation should be accepted, provided, it fully accords with that purpose, and is also in accordance with the rules of common sense and proper grammatical construction. It is to be assumed that the constitution makers were possessed of the desire to place in that instrument a workable provision fitted to meet the requirements of the situation, and that they were not engaged in an effort to produce something which would be impracticable and totally inadequate to afford the protection to the creditors of an insolvent banking institution which it was intended should be given them.

Respondent stresses the word "accruing" in the phrase and contends that the word as there used is the present or imperfect participle of the verb accrue, and conveys the idea of incomplete action; while the contrary contention is made by the appellant that the word should be given the meaning of the past or perfect participle of the verb, conveying the idea of action completed; contending further that the contracts, debts and engagements of the bank accrue only when the obligation arises to perform, and that prior to such time they are accruing obligations; and hence, contracts entered into, debts incurred, and engagements undertaken by the bank prior to the time a person becomes a stockholder therein, and which have not been matured by some formal proceeding or by a demand for their payment or by the insolvency of the bank,

are as much accrued obligations of the bank while he remains such a stockholder as contracts entered into, debts incurred, and engagements undertaken during the time of his ownership. We believe that the word "accruing" was used in this provision in the sense of "which have accrued."

In the *Shuey* and *Fremont State Bank* cases, *supra,* this interpretation of the word has been accepted. It then becomes necessary to define what is meant by the use of the word "accruing." According to Webster, accruing means "to come into existence as an enforcible right; as a cause of action has accrued when the right to sue has become vested." According to the Century Dictionary, the word means "to become a present, enforcible right or demand." According to the Standard Dictionary: "To become vested." According to Anderson's Law Dictionary: "To fall due." According to Bouvier's Law Dictionary: "To arise, to happen, to come to pass." According to Pope's Legal Definitions: "To rise, to grow, to become a present and enforcible demand." According to Stroud's Judicial Dictionary: "Rent accrues when it becomes due and at no other time," and so forth. Contracts, debts and engagements, then, accrue, not when the bank receives a deposit, for instance, but when the depositor makes a demand for the payment of his deposit, or when the bank becomes insolvent and the deposit by operation of law then becomes due and payable. The contracts, debts, and engagements of an insolvent bank have therefore accrued when the bank goes into liquidation, and the persons owning stock at that time are the ones who are liable for the constitutional superadded liability to meet those contracts, debts and engagements.

The result which would be reached by any other interpretation would be impracticable or unworkable

in most instances; and to say that such a result would be the fault of the law will not do when the other interpretation, which appears to us to be the proper one, would give force to the provision and is consonant with the language itself and the purpose of the constitution makers. They were endeavoring to provide for what is commonly called the double liability of the owners of bank stock; and it is not to be presumed that they were endeavoring to make impracticable, unworkable, and useless provisions in that regard. The object was to provide for payment by the stockholders of a bank of a superadded liability which would be of some assistance to the creditors of a bank in reducing their losses. It would not have been their intention to promulgate a scheme as visionary and futile as would result from the other interpretation of this provision. Under that other interpretation, creditors of a failed institution would be, in a great majority of cases, and in practically all cases where banks had had an existence for some period of time and their stock had been dealt in to any great extent, deprived of any benefit from the enforcement of the superadded liability. The litigation would be interminable. The results would be almost *nil,* and it would be a practical impossibility to determine the liability of the various persons who had been stockholders during the entire existence of the bank in question. Death, insolvency, removal from the state—all the various accidents and changes coming from lapse of time and altered conditions—would make a recovery of any substantial amount from former owners of the stock a matter of pure speculation, and, as a matter of fact, the attempt to collect such liability would cost more in the preparation and trial of the suits than could be recovered in the event judgments were obtained. The constitutional convention never intended any such result as this.

Illustrations might be multiplied of the confusion which would arise by the adoption of a construction other than that which we are endorsing, but it is sufficient to refer to but this one: If prior stockholders who had disposed of their stock several years before the bank's insolvency were to be held liable for deposits made during the time of their ownership, and which had remained in the bank until the time of its failure, the question would immediately arise as to whether the statute of limitations would run against the liability of such former stockholders. If it be held that there was no statutory limitation against proceeding to collect such liability, the determination of what pro rata share of the deposits the former stockholder owes would be a matter of inextricable confusion. Add but to this another fact—that the deposits had been changed in amounts from time to time, and we have reduced the condition to an absurdity. The constitution makers intended to afford some protection to bank depositors, and it is the duty of the court to so interpret the provisions of the constitution as to carry that purpose into effect.

An examination of the authorities in one or two states which have held to a theory opposed to that which we are adopting shows that there has been a multiplicity of suits and, as far as our examination has gone, in not one of them which has reached the final courts of those states has the stockholder been held liable, the judgments against the stockholders being uniformly reversed for lack of proof, capacity to sue, and so forth. The makers of the constitution were not holding before the depositors of banks a mirage such as that. A moment's consideration of the question must convince one that the language of the section, its object, and operation demand some interpretation more consonant with practicability.

It is true, of course, that the mere difficulty of enforcing a provision is not a sufficient reason for interpreting it contrary to its express terms, but it is a very persuasive argument, where the provision is ambiguous, for the adoption of that interpretation which will make the provision effective.

It is argued that the words "accruing while they remain such stockholders" are words of limitation, and that the construction which we have given them removes such limitation. We do not so view it. Looking to the language of the provision, and considering it in the light of the character of the instrument, its general purpose is plain. In an ordinary corporation, the stockholder is not liable for the contracts, debts and engagements thereof; he is only made so by legislation and the purpose of this constitutional provision is to create such a liability on the part of the stockholders of banks. The provision clearly does not intend to create a general liability on the part of stockholders for all the obligations or engagements for the reason that a limitation is fixed, beyond which the liability cannot be extended, to wit: an amount equal to the par value of the stock which he holds.

It is argued that the words, "accruing while they remain such stockholders" have a particular limitation in that they exempt something from the general liability imposed which without them would be included in that general liability. Admitting that this contention is true it only remains to determine whether there is some such thing so exempted. We take it that there is, and that the phrase is not meaningless, but applies to certain contracts, debts and engagements, to wit: those which have become due before the stockholder acquired his stock. Without multiplying instances which might occur, one alone is sufficient. Assume that

A. purchases his stock in a bank in the year 1915. The bank becomes insolvent in 1920. In the year 1914 a judgment had been obtained against the bank, which was unsatisfied at the time of its insolvency. Here is a debt or engagement of the bank which has accrued prior to A.'s ownership of the stock, and it could not be included as one of the obligations for which A. would be liable.

The decision to which we have arrived is, of course, in conflict with much that is contained in the *Shuey* and *Fremont State Bank* cases, *supra*, and it becomes necessary to consider those cases in the light of what we have just said. The *Shuey* case, in so far as it conflicts with the present case, should be overruled. It is erroneous and directly opposed in principle to the prior and subsequent decisions of this court which have passed upon the nature of superadded liability. In *Wilson v. Book*, 13 Wash. 676, 43 Pac. 939, an opinion not referred to in the *Shuey* case, and evidently not considered by the court in writing that opinion, the superadded liability was determined to be a secondary liability and one which resulted in the creation of a trust fund for the benefit of creditors of an insolvent bank. It was held that the existence of this liability dates from the bank's insolvency and the receiver is the only one who may enforce this liability for the benefit of creditors. That holding is inconsistent with the decision in the *Shuey* case, for the effect of the *Shuey* decision would be to create a liability at various times during the continuation of the bank as a going concern, and would result in relieving from payment many of those who had stock at the time of the bank's failure. The case of *Watterson v. Masterson,* 15 Wash. 511, 46 Pac. 1041, also was not referred to in the *Shuey* case and is inconsistent with the holding in the latter case, the court there saying:

"Hence, it was the duty of the courts to interpret our constitutional provision so as to make the enforcement of this contingent liability a part of the duties of the general receiver, if the language used would authorize such a construction. We thought, then, and still think, that such a construction is reasonable."

This was said in referring to the *Wilson* case, *supra.* The *Shuey* case is also inconsistent with the decision in *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, which held that the statute of limitations begins to run from the date of the bank's insolvency, at which time the liability arises, the court saying:

"As the liability becomes a trust fund upon the insolvency of the corporation, insolvency must be the event that gives rise to the liability, and places it within the reach of the receiver, and, this being true, it must logically follow that the cause of action accrues at the same time."

If, as held in the *Wilson, Watterson* and *Thorne* cases, *supra,* the stockholder's liability arises at the date of insolvency, then it must follow that the stockholders holding stock at that time must be said to be the ones intended to pay the liability. The trouble with the *Shuey* case is that the construction it gives to the constitutional provision is one that was perfectly consistent with a holding that the liability of the stockholder was primary, under which holding creditors could maintain their suits against the stock owners; but it is absolutely inconsistent with the holding that the liability is secondary. The decision is, therefore, to that extent, unsound. The *Shuey* case and the *Fremont State Bank* case, *supra,* in so far as they support the position taken in the *Shuey* case, are overruled.

Brief notice should be made of the affirmative answers. The first of these was a plea to the effect that the supervisor had acted arbitrarily, capriciously,

and without sufficient facts, in ascertaining and determining that the liabilities of the bank exceeded its assets, and that a fair and reasonable ascertainment of the amount of its obligations and assets would show that its assets were ample to meet its obligations. This, as we view it, raises no separate or distinct issue different from that raised by the allegations of the complaint and the denials thereto. The fact was determined by the proofs.

The second of the defenses is a plea to the effect that the appellants were induced to purchase the stock by fraudulent representations made by the bank and its officers. This, however, while it might be a good defense were the bank a going concern seeking to enforce some liability incurred by the purchase, is not a defense to the present action. A stockholder cannot defend against his superadded liability on the ground that he was induced by fraud to purchase his stock, where the action is by a creditor or his representative to enforce the liability. *Litchfield Bank v. Church,* 29 Conn. 137; *Farmers' State Bank of Mobridge v. Empey,* 35 S. D. 107, 150 N. W. 936; *Wilkes v. Knight,* 142 Ga. 458, 83 S. E. 89; *Robertson v. Conway,* 188 Fed. 579, 110 C. C. A. 377.

Article XII, § 11, may therefore be paraphrased in this manner:

"Every stockholder of any banking corporation owning stock at the time of its insolvency shall be liable for all contracts, debts and engagements of such corporation which become due at the time of insolvency to the extent of their stock therein at the par value thereof in addition to the amount invested in such shares."

It should be noticed here that the provision applies only to bona fide holders of stock, and that a former holder who had transferred his stock for the purpose

of evading superadded liability would still be held liable, if his transfer can be shown to have been for such purpose.

The conclusion, therefore, is that, upon the failure of a state bank, the then real holders of stock in that institution are liable up to an amount equal to the par value of their stock for all contracts, debts, and engagements of the bank which become due upon its failure; that this obligation is a secondary one, enforcible by the state banking authorities.

The judgment of the trial court was, therefore, correct and it is affirmed.

BRIDGES, TOLMAN, HOLCOMB, MITCHELL, and MAIN, JJ., concur.

FULLERTON, J., dissents.