[No. 18701.    Department Two.    April 15, 1925.]

CITIZENS BANK OF GEORGETOWN, *by John P. Duke, Supervisor of Banking et al., Appellants,* v.
F. K. ROBINSON, *Respondent.*[1]

BANKS AND BANKING (1)—LIABILITY OF STOCKHOLDERS—PERSONS LIABLE—TRANSFER OF STOCK BEFORE INSOLVENCY. A stockholder in a bank is not liable upon his superadded liability upon the insolvency of the bank, where, prior to the insolvency, he had made a *bona fide* sale and transfer of his stock to another for value, had given notice thereof to the bank, surrendered his certificate and requested issuance of a new certificate, which had been partly executed, but not entered upon the books owing to the insolvency declared next day.

Appeal from a judgment of the superior court for King county, Hall, J., entered October 15, 1923, upon findings in favor of the defendant, in an action to recover upon the superadded liability of a stockholder in an insolvent bank, tried to the court. Affirmed.

*D. E. Twitchell,* for appellants.

*Roberts & Skeel* and *J. J. Geary,* for respondent.

FULLERTON, J.—The Citizens Bank of Georgetown is a banking corporation organized under the laws of the state of Washington. It has a capital stock of $25,000, divided into shares of $100 each. The bank became insolvent, and was taken over for liquidation by the state officer now known as the supervisor of banking on January 28, 1921. Shortly after taking possession of the bank, the liquidating officer ascertained the liabilities and assets of the bank, finding that the former exceeded the latter by more than $25,000. The officer further determined that it was necessary, in order to meet the difference between the assets and liabilities, to assess the shareholders of the bank upon their super-

[1]Reported in 234 Pac. 1025.

added liability to the full extent of the par value of their shares, and, as of date March 26, 1921, made such an assessment. At the time the bank was taken over for liquidation, the respondent, F. K. Robinson appeared on the books of the bank as the owner of nine shares of its capital stock, and an assessment was made against his shares in the sum of $900. This sum the respondent refused to pay, whereupon the present action was begun against him to recover in that sum. The trial court, because of the facts subsequently to be stated, found there was no liability upon the respondent, and from the judgment entered on the finding, the state officer appeals.

The shares of stock held by the respondent were represented by two certificates. One of these for five shares was issued to him on December 16, 1919, the other for four shares was issued on January 26, 1921. On January 21, 1921, the respondent entered into a contract with one O. P. Malson for the purchase of certain real estate. As a part of the purchase price of the property he agreed to transfer to Malson fifteen shares of the capital stock of the bank. At that time he owned only the five shares represented by the certificate dated December 16, 1916. To comply with his contract he purchased ten other shares of the stock, six of which he caused to be transferred directly to Malson by the person from whom they were purchased. Four he took in his own name and are represented by the second of the certificates mentioned. The contract between Malson and the respondent was performed on January 27, 1921. At that time the respondent delivered the fifteen shares, duly assigned, to Malson. They were then forwarded to the bank, with both oral and written directions to issue a new certificate to Malson for the fifteen shares, and enter his name on the books of the bank as the owner thereof. The bank so far

complied with the directions as to prepare a certificate for fifteen shares in the name of Malson, and cause it to be signed by its president before the closing of the bank on that day. The certificate, however, was not countersigned by the cashier of the bank, nor was the corporate seal of the bank affixed, nor was any entry made on the books of the bank showing the transfer. The bank, it will be noticed from the dates given, was taken over by the state officer on the following day; in fact, the bank did not open for business on that day.

The court found, and the evidence justifies the finding, that the transactions between the respondent and Malson were in entire good faith, and that the respondent, at the time of the transaction, had no notice or knowledge that the bank was insolvent or in failing circumstances, or that it would not continue as a going concern. The contract between the respondent and Malson also called for a cash payment from the respondent to Malson, and required the respondent to assume and pay a mortgage then upon the real property transferred to him. The cash payment he made at the time the contract was performed, and subsequent thereto he paid the mortgage.

The appellant contends that the persons chargeable with the superadded liability imposed by the state constitution and state statutes upon the stockholders of an insolvent bank are the persons in whose names the shares of stock stand at the time the bank is found insolvent and taken over for liquidation, regardless of the question who may be the actual beneficial owners thereof. To support the contention, he cites our case of *Duke v. Johnson*, 123 Wash. 43, 211 Pac. 710, and cases from the Federal courts construing somewhat similar provisions found in the national banking acts. But a more careful reading of our own case will show that the precise question was not there presented.

The stockholders sought there to be charged not only appeared on the books of the bank to be stockholders, but were in fact the actual owners of the stock on which the liability was fixed, and had been such for sometime prior to the time the bank was taken over for liquidation. The question was not whether the defendants were the actual owners of the stock, but was rather what was the extent of their liability as such owners. But notwithstanding the question was not there presented, the court carefully guarded the question. In the body of the opinion, when touching upon it, this language was used:

"Committed as we are, as will appear later in reference to the adjudications of this court, to the doctrine that the liability imposed by this constitutional provision is secondary and arises only from the insolvency of the bank, it must perforce follow that, where this provision refers to stockholders, it refers to those who are bona fide holders of stock at the time of the insolvency."

And the concluding clause of the opinion is in this language:

"The conclusion, therefore, is that, upon the failure of a state bank, the then real holders of stock in that institution are liable up to an amount equal to the par value of their stock for all contracts, debts, and engagements of the bank which become due upon its failure; that this obligation is a secondary one, enforcible by the state banking authorities."

There was a reason for these guarded expressions. Instances have been known where stockholders of a bank, knowing of the bank's failing circumstances and its impending insolvency, have transferred their stock to irresponsible persons for the express purpose of avoiding liability. It sufficiently appears without so saying that stockholders should not be permitted to escape liability by this or any like subterfuge, hence

the reason for not laying down a hard and fast rule which would permit them so to do.

The Federal courts, as we read their decisions, do not lay down a different principle. The highest of these courts has indeed said that it is a settled doctrine, as a general rule, that the legal owner of stock in a national banking association—that is, the one in whose name the stock stands on the books of the association—remains liable for an assessment so long as the stock is allowed to stand in his name on the books, and this notwithstanding he may have made a transfer of the stock to another person. But the court in the case where the rule was perhaps most clearly announced pointed out the exceptions to the rule. *Matteson v. Dent,* 176 U. S. 521. One of these exceptions so pointed out is where a transfer has been fraudulently or collusively made to avoid a possible obligation to pay an assessment, and another is where a transfer has been made and the evidence thereof delivered to the officers of the bank with instructions to enter the transfer on the books of the bank and the officers fail so to do. In support of the last exception, the court cites the case of *Whitney v. Butler,* 118 U. S. 655. An examination of the case will show that the facts there under consideration were very similar to the facts of the case at bar. Whitney, a stockholder in a national bank, sold and assigned his shares of stock to another. The stock, after the sale, was delivered to the bank with directions to make a transfer to the purchaser on the stock register of the bank. This was not done, and subsequently the bank became insolvent. The stock was assessed by the comptroller as the property of the estate of Whitney, who had died after the assignment and prior to the insolvency of the bank. In a suit to recover the amount of the assessment, judgment went for the plaintiff in the court below,

which the appellate court reversed. In the course of the opinion, the court conceded the general rule before stated, but pointed out the distinction between the facts of the cases on which the rule was founded and the facts of the case then under consideration; saying, in substance, that the right to have the transfer made was complete on the surrender of the certificate with directions to make the transfer, and that the seller should not be held for the default or neglect of the officers of the bank. The court likened the situation of the seller to that of a grantor in a deed to real property deposited in the proper office to be recorded; the general rule being that the deed is deemed recorded from the time of its deposit.

In the present case, the respondent had, prior to the time the bank was found to be insolvent, made an absolute sale in good faith of his stock. He had made an actual assignment of it to his assignee and had received the purchase price. He had surrendered the certificates representing the stock to the bank with instructions to issue to his assignee a new certificate, and register the purchaser on its books as the owner of the stock. This was not done, it is true, but the fault was not that of the respondent. He had done everything that was within his power to do to complete the transfer, and the fault that it was not completed was the sole fault of the officers of the bank. It must be remembered that it is not here sought to hold the respondent because he was the actual owner of the stock at the time the bank was taken over for liquidation, but solely because at that time he appeared on the books of the bank as such owner. In our opinion, this is not enough. We think the law contemplates holding the actual owner of the stock. We think, furthermore, that a person is not such an actual owner where he has made a transfer in good faith and has

placed the evidences of the transfer with the bank, and that nothing remains to complete it but the action of the bank's officers themselves.

The judgment is affirmed.

HOLCOMB, PARKER, MACKINTOSH, and MAIN, JJ., concur.