E. J. DEMPSTER, RECEIVER OF THE BANK OF CASS COUNTY, APPELLANT, V. MYRTLE P. ATWOOD ET AL.: BYRON CLARK, APPELLEE.

FILED JUNE 4, 1929. No. 26590.

C. M. *Skiles* and *I. D. Beynon* for appellant.

*Jesse L. Root, H. E. Kuppinger* and *William A. Robertson, contra.*

Heard before Goss, C. J., Dean, Good, Thompson and Eberly, JJ., and Lightner and Redick, District Judges.

Lightner, District Judge.

Suit by the receiver of the failed Bank of Cass County, Plattsmouth, Nebraska, to recover the superadded or double stockholders' liability. The lower court found for the defendants and dismissed the action. The receiver appeals and the only matter presented by the appeal relates to the liability of the defendant Byron Clark.

The bank was suffering on account of dissention between two factions of stockholders and, on October 4, 1920, twenty-one shares of stock were issued to Mr. Clark and at about the same time he became a director of the bank. Mr. Clark claims, however, that he never actually became the owner of this stock and that the transfer was made to him at the request of one J. Hart, a representative of the state banking department, who induced Mr. Clark to accept a transfer of the stock and go on the board of directors for the purpose of composing the differences between the two factions and otherwise stabilizing the bank and giving the people of the community confidence in it. Mr. Clark continued to be the ostensible owner of the stock and remained on the board of directors until the final failure of the bank and the taking of it over by the department on December 13, 1921. During that time he attended the directors' meetings. There is no proof that he ever paid for or became the actual owner of the stock. The fact that Mr. Clark became a member of the board of directors was given wide publicity

and there is no doubt but that the general public believed him to be the actual owner of stock and a member of the board of directors of the bank. Plaintiff claims that defendant Clark is estopped by these facts from now claiming that he was not a stockholder.

In regard to Mr. Clark's defense that he never actually became the owner of the stock we think that the same is not available to him. In 6 Fletcher, Cyclopedia Corporations, sec. 4184, it is said:

"A person who voluntarily permits his name to stand on the corporate books as a stockholder is estopped as against creditors to deny that he is one, whether it is sought to hold him liable for a balance due on the stock or for an additional statutory liability. So a transferrer of stock remains liable as a stockholder if he continues to appear as a stockholder on the corporate books. Nor, as a rule, can a person who appears on the books as the absolute owner of stock escape liability on the ground that he holds it merely as a pledgee, or merely as trustee or agent for another."

This would seem to follow from the rule which prevents one who has been induced to purchase stock by fraud from rescinding after the insolvency of the bank as to creditors of the corporation. Numerous cases so hold, including the recent case of *Smith v. Bradshaw*, 222 N. W. (S. Dak.) 683. The reason for the rule is well stated in *Farmers State Bank v. Empey*, 35 S. Dak. 107, wherein it is said in the opinion:

"No doubt the general rule, under a law such as the one before us, is that, where one becomes a purchaser of bank stock in consequence of frauds practiced upon him by another, whether such other be an officer of the bank or a mere stockholder, such purchaser must look to the wrongdoer for redress, and is estopped, as against creditors, to deny that he is a shareholder, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to his position as shareholder. Michie, Banks and Banking, 1882; *Scott v. Latimer*, 89 Fed. 843. Certainly a creditor of a corporation, when he becomes such, is under no obligation to ascertain what representations, if

any, may have been made to the stockholders to induce them to become such."

In *State Bank v. Gotshall,* 51 A. L. R. 1200 (121 Or. 92), it is held:

"Fraud inducing one to purchase bank stock cannot be urged as a defense in an action under a double liability statute against the stockholders by the state superintendent of banks, upon the insolvency of the bank, since the purpose of the statute is to protect depositors and creditors."

In *Commissioner of Banks v. Cosmopolitan Trust Co.,* 253 Mass. 205, 220, it is said in the opinion:

"Those who avowedly assume the relation of stockholders to such institutions in a sense stand sponsor for it. Public confidence in such institutions ought not to be shaken by relieving apparent stockholders from their ostensible liability, established by the law for the benefit of creditors, for any except the most potent and convincing reasons."

Many other cases to the same effect are cited in the opinion, and in the note at 41 A. L. R. 674. While these are nearly all cases of attempted rescission on account of fraud, the same reason holds good in the instant case. Mr. Clark was held out to the public as a stockholder and director. The creditors of the bank were under no obligation to ascertain the status of each stockholder. They could rely on those being stockholders who held themselves out or were held out to be such. Appellee's first contention must therefore be overruled.

Neither would the fact that there was an arrangement with Mr. Hart constitute a defense to this action. In *Markus v. Austin,* 284 S. W. (Tex. Civ. App.) 326, it is held:

"If the commissioners of banking and stockholder of bank entered into agreement that, on payment of assessment restoring impaired capital, stockholder would not be held liable for assessment provided by Rev. St. 1925, art. 535, such agreement was void as against provisions of law and fraud on creditors."

To the same effect see *Scovill v. Thayer,* 105 U. S. 143, and *Sanger v. Upton,* 91 U. S. 56. These cases hold in effect

that any such arrangement is void because it is against the provisions of the law and a fraud upon the creditors whose protection was provided in said law, that the law could not be rendered nugatory by an agreement or contract between the respective stockholders and the banking department, much less a single member of the banking department.

The principal reason, however, urged by appellee on oral argument in support of the judgment of the lower court was that there was no proof that any of the claims of creditors accrued during the some 14 months during which appellee remained an apparent stockholder of the bank. Section 7, art. XII of .the Constitution, which makes stockholders liable for the superadded liability is as follows:

"Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder, and all banking corporations shall publish quarterly statements under oath of their assets and liabilities."

This constitutional provision limits the liability of the stockholder to those debts or obligations which arose or were incurred while he remained a stockholder. The meaning of the constitutional provision is that the persons who are stockholders of a bank when credit is extended to it, or a liability incurred by it, shall be liable to the creditors to an amount equal to their stock. *Golden v. Cervenka,* 278 Ill. 409. The above case construes a similar provision in the Constitution of the state of Illinois.

Appellant calls our attention to and asks us to follow the case of *Duke v. Johnson,* (123 Wash. 43), 211 Pac. 710, wherein it is held:

"Within Const. art. XII, sec. 11, and Rem. Comp. St., sec. 3242, making every stockholder of any banking corporation liable for its debts to the extent of the par value of his stock, the stockholders referred to are those who own stock in the bank at the time of its insolvency.

"Within Const. art. XII, sec. 11, and Rem. Comp. St., sec.

3242, making every stockholder of a bank liable to the extent of the par value of his stock for debts accruing while they remained such stockholders, the word 'accruing' is used in the sense of 'which have accrued.' "

Section 11, art. XII of the Constitution of Washington, is almost identical with section 7, art. XII of our own Constitution, and is as follows:

"Each stockholder of any bank or insurance corporation or joint-stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

We have carefully read the opinion in *Duke v. Johnson*, *supra*. The construction given to the Washington Constitution in that case seems to us to be somewhat strained. It would prevent a stockholder who was such at the time of the insolvency from alleging and proving that the liabilities for which he was sought to be held accrued prior to the time he became a stockholder. Our Constitution makes him liable only "for all its liabilities accruing while he remains such stockholder." To make him liable for liabilities which accrued prior to the time he became a stockholder would be in plain violation of our constitutional provisions. The Washington court defines the word "accruing" to mean "which have accrued," and it holds that the liabilities referred to are those existing at the time of the insolvency; in other words, those liabilities that mature or become liabilities by reason of the insolvency. We do not think that such is the meaning of our constitutional provision. The stockholder is liable only for liabilities accruing or arising while he remains a stockholder. Our Constitution does not lay down any rule as to the burden of proof.

Appellant earnestly contends that the burden in these cases is not on the plaintiff to show that liabilities accrued

while defendant remained a stockholder, but that it was on the defendant to show that there are no creditors who became such while he remained a stockholder. Appellant cites a number of cases in support of this rule, including the recent case of *Smith v. Bradshaw*, 222 N. W. (S. Dak.) 683. To the same effect is *Farmers State Bank v. Empey*, 35 S. *Dak*. 107, and *Chapman v. Harris*, 275 S. W. (Tex. Civ. App.) 75. Appellee attempts to distinguish these cases on the ground that they were actions to rescind, but they were not. They were suits by creditors of the bank or by a commissioner or receiver to collect the superadded liability, in which the defense was either that defendant had rescinded the purchase on account of fraud or that he was entitled to rescind it on account of fraud. However, the constitutional and statutory provisions are different in the different states, and the provisions creating the liability in the cases above referred to and in other cases we have examined are so different from those of our Constitution as to be of little value in furnishing a guide to govern us in this case. Our Constitution makes the stockholder liable only "for all its liabilities accruing while he remains a stockholder" and it would seem necessary for the plaintiff to allege and prove that the liabilities or some of them accrued while the defendant remained a stockholder. The general rule is: "The facts without the existence of which the statute does not enforce liability on the stockholder in a bank for its debts must be affirmatively shown." Michie, Banks and Banking, 242. The appellant recognized this rule, for he alleges in the petition that the amount remaining unpaid "are liabilities accruing while the present stockholders of said bank remained stockholders thereof." It is not always necessary, however, for a party who has the burden of proving a fact to make direct proof thereof. Facts and circumstances may appear of record, or there may be presumptions, which aid a party and make a *prima facie* case in his favor. Thus the fact that defendant Clark was a stockholder at the time of the insolvency of the bank might alone be sufficient to make a *prima facie* case against

him. The legislature seems to have assumed that such is the meaning of the constitutional provision. Section 8015, Comp. St. 1922, provides as follows:

"Every stockholder in a banking corporation shall be individually liable to its creditors, over and above the amount of stock by him held, to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder. In case any stockholder shall sell, transfer or dispose of such stock, knowing that such bank is insolvent, he shall be deemed the owner of such stock, and liable thereon the same as if such stock had not been sold, transferred or disposed of; and such liability may be enforced whenever such banking corporation shall be adjudged insolvent without regard to the probability of the assets of such insolvent bank being sufficient to pay all of its liabilities."

While the last part of said section, reading "and such liability may be enforced whenever such banking corporation shall be adjudged insolvent without regard to the probability of the assets of such insolvent bank being sufficient to pay all of its liabilities," was declared unconstitutional in the cases of *Bodie v. Pollock*, 110 Neb. 844, and *State v. Farmers State Bank*, 113 Neb. 497, the remainder of it remains in force and would indicate that the legislature interpreted the constitutional provisions to mean that, if the sale is made without the seller knowing that the bank is insolvent or while the bank actually is solvent, the seller is relieved from the liability and the purchaser becomes liable. This indicates that the construction placed on the Constitution by the legislature was that the stockholders who were such at the time the bank failed would ordinarily be liable for the superadded liability. It is true that we have held that the constitutional provisions are self-executing and that the stockholder's liability thereby created is free from legislative interference. The latest statement of this rule is found in *State v. Citizens State Bank of Royal*, *ante*, p. 337. *Bodie v. Pollock*, 110 Neb. 844, and other cases are cited in the opinion. However, these cases do not

hold that the practical construction put upon the Constitution by the legislature is not entitled to some weight. As a rule, transfers made in good faith and in accordance with legal requirements are valid and release stockholders from subsequent liability, while new purchasers are liable on the bank's failure for its indebtedness without reference to the time it was incurred. 7 C. J. 504. A construction making those stockholders *prima facie* liable who were such at the time of the insolvency of the bank is well within the purview of the constitutional and statutory provisions. Section 7, art XII of the Constitution, and section 8015, Comp. St. 1922, indicate that both the framers of the Constitution and the legislature intended to make those stockholders *prima facie* liable who were such at the time of the insolvency of the bank. Those who administer the banking law, including, in so far as we know, the district courts, have construed the above constitutional and statutory provisions to refer to the stockholders who were such at the time of the insolvency of the bank. It is customary for the receiver in his report asking authority to bring the suit to refer only to the stockholders who were such at the time of the insolvency of the bank and the order of the court authorizing suit refers to such stockholders. We think that a fair and reasonable interpretation of the constitutional and statutory provisions and the meaning that has been generally given to them is that the stockholders referred to are *prima facie* those who were such at the time of the insolvency of the bank. However, the proof in this case goes much further in establishing a *prima facie* case against Mr. Clark than the mere showing that he was a stockholder at the time of the insolvency of the bank. It is established that Mr. Clark became an ostensible stockholder on October 4, 1920, and remained such until the bank was taken over by the department on December 13, 1921, a period of 14 months and 9 days; that during said time the bank was actually engaged in the banking business. A report of the condition of the bank on August 6, 1920, shows assets of $788,527.93, individual deposits subject to check, $280,237.94, time cer-

tificates of deposits, $324,547.01. A report on November 13, 1920, shows assets of $749,594.47, individual deposits, $258,824.72, time certificates of deposits, $304,015.70. A report dated February 16, 1921, shows total assets of $643,-055.74, individual deposits, $193,393.37, time certificates of deposits, $288,289.16. The report of May 23, 1921, shows total assets of $623,974.10, individual deposits, $153,726.25, certified checks, $262,403. The prior and subsequent reports would indicate that the item of certified checks was listed wrong through clerical error and that probably what was meant was time certificates of deposit. The last report in evidence is that dated August 6, 1921, and shows total assets, $658,054.93, individual deposits, $177,959.30, time certificates of deposits, $262,770.81. It is common knowledge that time certificates are usually issued for either six months or one year, and in *Fremont State Bank v. Vincent,* 112 Wash. 493, it was held that, when an original certificate of deposit was taken up by the issuing bank, interest paid thereon and new certificate issued, the liability accrued, not when the original certificate was issued, but when the new certificate was issued. The liability on an ordinary checking deposit accrues when the deposit is made. *Golden v. Cervenka,* 278 Ill. 409. It is also generally known that banking is an active business, representing, as it does, the liquid assets of the community. It is characterized by a rapid turnover and ordinarily the daily deposits in a bank average from 1½ to 2 per cent. of its total deposits. It further appears from the record in this case that the capital stock of the bank was $50,000 during the 14 months Mr. Clark was connected with it. The district court for Cass county on December 10, 1926, found that all the debts and liabilities of said bank were $470,-488.12, that all of the corporate property had been exhausted and $307,965.98 realized therefrom, that $13,500 had been realized from the double liability of stockholders, and that there remained unpaid at said time $149,022.14, and suit against the remaining stockholders, including Mr. Clark, was authorized. These findings, though not conclu-

sive, were sufficient *prima facie* evidence of the facts therein found so as to cast the burden of disproving them on Mr. Clark. *Miller v. Connor,* 177 Mo. App. 630. And we think that from these findings and from the facts above referred to it may be found that there are creditors of the bank whose claims arose during the time Mr. Clark remained a stockholder. In fact, a careful examination of the pleadings, evidence and briefs in this case convinces us that all parties assumed during the trial that the indebtedness arose while Mr. Clark remained a stockholder.

For the various reasons above set forth, the judgment in appellee's favor is reversed and the cause remanded to the district court, with instructions to enter a judgment against appellee for the sum of $2,100, together with interest at the rate of 7 per cent. per annum thereon from and after the 12th day of March, 1927.

REVERSED.

The following opinion on motion for rehearing was filed November 22, 1929.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

PER CURIAM.

This is an action in equity brought by the receiver of an insolvent state bank to enforce the double stockholders' liability provided by section 7, art. XII of our Constitution, against Clark, appellee, and others, the names of whom it is not necessary to mention, in which judgment was entered dismissing the suit. The receiver appealed. After the case was by us heard and considered, an opinion was

submitted and adopted reversing the judgment of the trial court, and ordering it to enter judgment as follows: "For the various reasons above set forth, the judgment in appellee's favor is reversed and the cause remanded to the district court, with instructions to enter a judgment against appellee for the sum of $2,100, together with interest at the rate of 7 per cent. per annum thereon from and after the 12th day of March, 1927." The opinion is reported *ante*, p. 579. Thereafter Clark filed a motion for a rehearing which was set down for argument to the court. After such hearing was had, and reinvestigation made, it was by us determined that the rules announced in paragraphs 1, 2, and 3 of the syllabus of the original opinion are correct statements of the law applicable to the facts involved, but that further consideration should be given to paragraph 4 of the syllabus, which is: "Evidence examined, and *held* that a *prima facie* case was made against defendant for the double stockholders' liability."

We have, with much care, reread the bill of exceptions, and conclude that there is convincing evidence tending to prove that there are liabilities reflected which accrued while Clark remained a stockholder. However, the questions stressed in the trial court were those covered by our holdings in paragraphs 1, 2, and 3 of the syllabus hereinbefore referred to, and we are thus left without those necessary details which would enable us to intelligently compute the amount of the above indicated liabilities, and this without tangible fault chargeable distinctively to either party to the suit. Hence, to hold as we did in the original opinion that a mandatory judgment should be entered in favor of the plaintiff, or, as insisted upon by appellee Clark, that the judgment of the trial court should be affirmed, would be to deny to the litigants in this case that which they are each fundamentally entitled to, to wit, a fair trial.

As to paragraph 4 of the syllabus, for the reasons stated herein, the same is set aside, and the judgment heretofore entered in this court is vacated; and the judgment of the trial court is set aside and the cause remanded for further

proceedings in harmony with this opinion, with leave to the respective parties, if they so desire, to reform their pleadings to conform with the views expressed herein.

REVERSED.