[No. 12541.   Department One.   May 29, 1915.]

WILLETT & OLESON, *Respondents*, v. J. F. JANECKE, *Appellant*.[1]

RECEIVERS—ATTORNEY'S FEES—PERSONAL LIABILITY.   A receiver of an insolvent corporation is not personally liable to attorneys for any deficiency in the allowance by the court of their claim for compensation, where, under the orders of the court, he employed attorneys to serve him in his trust capacity, and in good faith endeavored to procure a proper allowance for them, in which effort the attorneys participated, and paid over to such attorneys the entire amount allowed by the court.

Appeal from a judgment of the superior court for King county, Humphries, J., entered November 14, 1914, upon findings in favor of the plaintiffs, in an action on contract, tried to the court.   Reversed.

*Geo. B. Cole* and *John Wesley Dolby*, for appellant.

*Edward Judd*, for respondents.

PARKER, J.—The plaintiffs, copartners engaged in the practice of law in Seattle, commenced this action in the superior court for King county, seeking recovery of compensation for legal services rendered by them to the defendant as receiver for the Angeles Brewing & Malting Company, an insolvent corporation.   Trial before the court without a jury resulted in findings and judgment against the defendant personally, from which he has appealed to this court.

The undisputed facts, which we regard as determinative of the rights of the parties, may be summarized as follows: In April, 1910, appellant was, by the superior court for Clallam county, appointed receiver for the Angeles Brewing & Malting Company, a corporation with its principal place of business in that county.   The corporation was then insolvent, and appellant was appointed receiver and took charge of the property and affairs of the corporation and continued

[1]Reported in 149 Pac. 17.

to act as receiver until July, 1914, when he was succeeded by another receiver. Soon after appellant's appointment as receiver, an order was made by the superior court for Clallam county in the receivership proceedings, authorizing and directing him to employ counsel to advise him touching his duties as receiver and to represent him in litigation in which he as receiver might become a party. Appellant thereupon employed respondents for that purpose.

There is nothing in the record pointing to any employment of the respondents by appellant to advise him or to represent him or his interests other than in his official capacity as receiver, nor is there anything in the record indicating that appellant agreed to become personally liable to the respondents for their compensation. Manifestly, respondents fully understood that this was the nature of their employment. Thereafter respondents entered upon their employment and continued to render services to the appellant in the interest of the receivership, but not otherwise, while he continued to act as receiver. Respondents claim that their services so rendered were of the reasonable value of $15,000, and that they also disbursed in expenses incident to their services $629.55. Appellant has paid respondents $5,670.50, which, according to respondents' claim, would leave a balance of $9,959.05, for which judgment was rendered in this action in their favor against appellant personally. There occurred upon the settlement of the appellant's account as receiver in the superior court of Clallam county, according to the testimony of one of the respondents, as set forth in the abstract, the following:

"The attorneys for the receiver (respondents) prepared a final report covering all of the doings of the receiver from his appointment to July 23, 1913. This final report was heard on September 29th and 30th, 1913. All vouchers, books of account and records of every kind were taken to the court and the matter was thoroughly investigated. The court asked for further information as to certain items. This was furnished in the nature of a supplemental report and argument.

"The court did not pass on the report at that time, but ordered a supplemental report to be filed covering the period from July 23, 1913, to March 1, 1914. This the attorneys prepared and filed. At the hearing on the report of July 23, 1913, evidence had been introduced that $15,000 was reasonable compensation to be allowed for the legal services rendered. The supplemental report of March 1, 1914, contained a statement that the attorneys for the receiver had submitted to the receiver a bill for $15,000 which the receiver reported was reasonable and asked for an allowance of that amount. A copy of that report was served on each attorney who had appeared in the case, together with a notice of the time and place of hearing the report, and a notice to serve and file any objections or exceptions. No objections or exceptions of any kind were filed. The creditors were represented at the hearing by two attorneys who attacked the report in other particulars, but did not object in any way to an allowance of the $15,000 fee claimed. Two additional expert witnesses testified at that hearing that $15,000 was reasonable compensation for the legal services rendered.

"There were certain negotiations affecting the form of the order to be entered on the final reports, and thereafter, on May 5, 1914, the court signed and entered an order as drawn by the plaintiffs in this case, with certain immaterial exceptions. Plaintiffs then resigned as attorneys about May 10, 1914. The judge having charge of the receivership made allowances to the receiver of $4,750 on account of legal services, but has made no further allowances."

We quote this testimony to show that appellant has in good faith endeavored to procure from the court in the receivership proceedings an allowance of attorney's fees in the full amount claimed by respondents, and also to show that respondents participated in the efforts of appellant to procure the allowance of attorney's fees claimed by them.

Counsel for appellant contend that he is not personally liable to respondents for their services rendered to him as receiver. We are of the opinion that this contention must be sustained in the light of the facts we have noticed. Counsel for respondents invoke the general rule that an allowance of attorney's fees in cases of this nature is properly made to the

receiver and not directly to the attorneys, and that the attorneys must look to the receiver for their compensation; citing 34 Cyc. 465, and other authorities. This is the general rule applicable to an allowance of attorney's fees made upon the settlement of a receiver's account. But it does not follow that attorneys employed by a receiver in pursuance of an authorization made by the court for attorney's services solely in relation to the receivership, may hold the receiver personally liable, when the receiver has in good faith endeavored to procure a proper allowance of attorney's fees by the court and has paid over to such attorneys the entire amount allowed by the court; especially where the attorneys, as here, have participated with the receiver in his efforts to procure the allowance claimed. In the text of 23 Am. & Eng. Ency. Law (2d ed.), 1098, we read:

"A receiver is, of course, liable upon any valid and authorized contract made in the course of his duties. The liability of a receiver upon contracts entered into in his official capacity is not, however, personal, but as a representative of the trust. The enforcement of such contracts, or the payment of damages for their non-performance, must fall primarily upon the property and fund in the hands of the court."

We are quite unable to understand why this rule is not applicable here. Respondents' contract of employment with the receiver manifestly contemplated services to be rendered by them only in the interest of the trust. Their right to compensation was, we think, of the same nature as that of any other contractual obligation incurred by the receiver as such, and did not result in a primary personal liability on the part of the receiver. Of course, the receiver might render himself personally liable by special contract, or by failure to act in good faith looking to the payment out of the trust property of an obligation he incurs as receiver, but we have no such case here. In *Vanderbilt v. Central R. Co.*, 43 N. J. Eq. 669, 12 Atl. 188, considering the nature of the liability incurred by

the receiver by his contracts made as such, Justice Magie, speaking for the court, observed:

"When a receiver has thus acquired discretionary powers to operate an insolvent railroad, his position is peculiar, and the contracts he makes for that purpose are *sui generis.*

"Such a receiver is not exempt from liability to answer for the injuries inflicted by the wrong doing or negligence of those he employs in operating the railroad. Yet the liability is not a personal one, but only falls on the receiver as the representative of the property and fund managed by the court, and damages recovered for such injuries are to be thus collected. Yet upon such liability no suit can be brought except by leave of the court which appointed the receiver. Such leave, however, cannot be denied, unless the claim appears manifestly unfounded and vexatious. *Palys v. Jewett,* 5 Stew. Eq. 302; *Little v. Dusenberry,* 17 Vr. 614.

"Analogous principles should be applied to those acts of a receiver which constitute contracts with third persons in the operation of an insolvent railroad in his charge.

"The liability of a receiver upon such contracts is not personal, but as a representative of the trust. The enforcement of them, or the payment of damages for his non-performance of them, must fall primarily upon the property and fund in the hands of the court."

In *Walsh v. Raymond,* 58 Conn. 251, 20 Atl. 464, 18 Am. St. 264, there was involved an attempt on the part of counsel who had rendered legal services for a receiver to hold the receiver personally liable for compensation therefor under circumstances quite similar to those here involved. In holding that the receiver could not be so held, Justice Hall, speaking for the court, said:

"A receiver is uniformly regarded as an officer of the court. He is the servant to whom the court entrusts the property *in custodia legis,* of which the court itself is the guardian. He is regarded as the executive officer of a court of chancery, in much the same sense as the sheriff is the executive officer of a court of law, and the goods or property in his hands are as much in the custody of the law as if levied upon under an execution or attachment: High on Receivers, § 2. Baldwin, J., in giving the opinion of the court in *Beverly v. Burke,* 4

Grat. 208, says:—'The receiver is the officer and representative of the court, subject to its orders, accountable in such manner and to such persons as the court may direct, and having in his character as receiver no personal interest but that arising out of his responsibility for the correct and faithful discharge of his duties. It is of no consequence to him how, or where, or to whom, the court may dispose of the funds in his hands, provided the order or decree of the court furnishes to him a sufficient protection.'

"It is evident that a receiver must, in the absence of statutory authority, derive his powers largely from the established practice of courts of equity, and in this respect as well as his relations to the court appointing him and the consequent restriction upon his powers, a receiver occupies a somewhat different position from that of an executor or administrator. Strictly, a receiver has no right to incur any liability or in any way hazard the fund in his custody without the consent of the court. . . .

"We cannot conceive that any attorney at law, whose every act must be with full knowledge that he is acting for an officer of the court, will complain that in accepting employment for a receiver he is held to do so with the understanding that his compensation will depend upon the amount that may be allowed him therefor by the court upon the final accounting of the receiver. Any other rule would subject the receiver to expensive litigation after his final accounting and discharge from his trust by the court. We do not mean, however, to be understood as holding that a receiver, while acting as such, cannot make himself personally liable upon his contracts or otherwise, but simply that he will be protected so long as he acts strictly under the orders of the court appointing him."

Counsel for respondent call our attention to, and rely upon, observations made by this court in *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945, as follows:

"The allowance for attorney's fees is not made to the attorney, but to the administrator, as a necessary expenditure incidental to his settlement of the estate. There is no relation between the administrator's attorney and the estate, and he can assert no claim against the estate for his services, but the administrator is himself liable in a suit by the attorney."

These remarks were made in connection with the administration of an estate of a decedent where there was involved nothing but the right of the administrator to an allowance as against the estate. The question of whether the attorney could recover from the administrator more than the amount allowed by the court in the settlement of his account was not there involved. The above quotation from *Walsh v. Raymond*, pointing out the difference between the powers of administrators and receivers, we think is, in any event, sufficient to show that the remarks of the court in *In re Sullivan's Estate* would not be controlling here.

We conclude that, under the facts disclosed by this record, the respondents have no right of recovery whatever against appellant personally. The judgment of the trial court is reversed.

MORRIS, C. J., MOUNT, CHADWICK, and HOLCOMB, JJ., concur.