[Nos. 23089, 23110, 23111. *En Banc.* April 2, 1931.]

THE STATE OF WASHINGTON, *on the Relation of John H. Dunbar, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent*.

THE STATE OF WASHINGTON, *on the Relation of Harry C. Johnson, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent*.

THE STATE OF WASHINGTON, *on the Relation of Harry C. Johnson, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent*.[1]

[1]Reported in 297 Pac. 774.

The *Attorney General* and *Bausman, Oldham & Walkinshaw,* for relator.

*Caldwell & Lycette* and *Dean H. Eastman,* for respondent.

*Greene & Henry* and *Cassius E. Gates, amici curiae.*

TOLMAN, C. J.—Cause No. 23089 is a petition for a writ of review; in cause No. 23110, the relator likewise seeks a writ of review; and in cause No. 23111, a writ of prohibition is sought. All of these actions grow out of one proceeding now pending in the superior court, and, counsel consenting, this court has ordered that they be consolidated, to the end that the three questions raised be all disposed of at one time and in one opinion.

It appears that on February 28, 1931, the *Attorney General,* proceeding under § 13, chapter 169, Laws of 1919, p. 505, as modified by a later act, filed his complaint in the superior court, seeking the appointment of a receiver for the Puget Sound Savings and Loan Association, and asking that H. C. Johnson, director of efficiency, be so appointed. The court, in due time and course, as requested, appointed "Harry C. Johnson, the director of efficiency of the state of Washington," as permanent receiver of the corporation involved.

In the order dated March 3, 1931, appointing the receiver, was incorporated, "It is further ordered that *Caldwell & Lycette be and they are hereby appointed attorneys for the receiver.*" This last quoted provision of the order presents the sole question which the *Attorney General* seeks to have reviewed.

Thereafter, and on March 13, 1931, the respondent judge made and entered an order in the cause, removing relator Johnson as receiver and appointing one H. J. Hoffman, then the state supervisor of savings and loan associations of this state, as temporary receiver and liquidator of the corporation; and, on the same day, made and entered an order appointing the firm of Caldwell & Lycette as attorneys for the temporary receiver. It is this order of removal which is attacked by the relator Johnson in his application for a writ of prohibition.

Prior to his removal as receiver, the relator Johnson moved in the court below for the vacation of the order appointing attorneys for the receiver, and asked leave of the court to select and employ his own counsel. This application was denied, and primarily it is that ruling which is sought to be reviewed in the third proceeding filed here.

The entire record has been certified to this court, and thus the three questions are now before us for decision.

By reason of the press of time and lack of decided cases applicable, we cannot now as adequately discuss these questions as we would like; but a majority of the court being clear as to the results which must be reached, we hasten to express our views as clearly as may be, in order that the liquidation of the corporation involved may proceed in a prompt and orderly manner, to the end that the best possible results to depositors and creditors be obtained.

▮ The first and most far-reaching question, and the one which we think controls all of the other questions in the case, is as to the nature of the receivership of savings and loan associations under our statute. Is it a strictly statutory receivership in which the court participates only for the purpose of determining judicially that an unsound condition exists, and, having so determined, further proceedings are wholly in the hands of the director of efficiency? Or, the statute providing when and how a receiver may be appointed and stopping there, does it follow that the court acts judicially in appointing the receiver, retains jurisdiction of the trust, and the receiver appointed becomes the arm of the court appointing him and must proceed like any other chancery receiver, subject to the direction and control of the court so long as he continues to act?

Chapter 169 of the Laws of 1919, p. 494, names the state auditor as the person in charge of savings and loan associations, but by § 8, Laws of 1925, Ex. Ses., p. 406; Rem. 1927 Sup., § 3735½, the director of efficiency was substituted for the state auditor; so that, reading "director of efficiency" in the place of "state auditor," as the modifying law requires, the only stat-

ute touching the question we are now considering is the latter part of § 13, chapter 169, Laws of 1919, p. 505, which reads:

"Meanwhile, the auditor shall remain in charge of the books, records and assets of every description of such association, attend or be represented at all directors' and stockholders' meetings held, suggest such steps as he may deem necessary to restore such association to a sound condition; and if same is not done within the 20 days allowed by the statute he shall report the facts to the attorney general and it shall thereupon become the duty of the attorney general to institute proceedings in the superior court of the proper county for the appointment of the state auditor as receiver and for the dissolution of such association, or such other proceedings as the occasion may require."

Since time immemorial, courts of equity, under the common law, have had exclusive jurisdiction of causes seeking the appointment of receivers, and any statute designed to oust the courts of their jurisdiction would be in derogation of the common law and therefore to be strictly construed. Or, if this be questioned, then since 1854, by statute, Rem. Comp. Stat., § 741, the superior court has had the exclusive authority to appoint a receiver for, and to wind up the affairs of, a corporation which is in danger of insolvency, or which has forfeited its corporate rights. Since repeals by implication are not favored, it must be held that the act now under consideration in no part repeals or modifies the pre-existing statute.

Does the act of 1919 create a statutory receiver? There is nothing in the language used, and nothing necessarily impiled, which so indicates. Had the legislature such an idea in mind, a simple added phrase to the effect that the receiver, when appointed, should proceed to liquidate the affairs of the corporation,

under the terms of the statutes relating to insolvent banks, without the further intervention of the court, or anything which would limit the jurisdiction of the court to the necessary findings of fact and the appointment only of the receiver, would have sufficed. But, instead of so limiting the court, the statute limits only the executive branch by authorizing the director of efficiency to remain in charge only until a receiver is appointed, and by authorizing the *Attorney General* only to initiate the proceedings for the appointment of the receiver and the dissolution of the corporation, thus leaving untouched and wholly unimpaired the jurisdiction of the court which the *Attorney General* is directed to invite.

Having so brought the matter into court, and given the court jurisdiction of the subject-matter, the only possible inference left is that the legislature intended that the court should continue to exercise its general and well-recognized jurisdiction, without any statutory limitation, until all matters involved in the liquidation were completed. That this is the only possible conclusion, is fortified by the fact that the statute supplies no machinery for, or authority in, the receiver, to proceed by so much as a single step with the liquidation, without the direction and authority of the court. Without such machinery or authority, how could the receiver fix a time limiting the presentation of claims, or rule that any claim was barred because not timely or properly presented? How pass upon or allow or disallow any claim?

In fact, it would appear that if the receiver were a statutory one, as contended, he could hardly take a single step of any kind without inviting actions innumerable to restrain, overrule, or set aside the act done; and a failure on his part to act would have the same result. So that, instead of an orderly proceeding under

the control and direction of the court at every step, we would have a disorderly proceeding, with a multiplicity of independent suits, by which the parties interested would seek control of a court of competent jurisdiction in the matters attending the liquidation.

If, then, as we now hold, the receiver, when appointed, becomes the ordinary chancery receiver and an arm of the court which appointed him, and subject at all times to the control and direction of the court, then it is immaterial for present purposes whether or no it is the mandatory duty of the court to appoint only the director of efficiency as receiver. The trial court did so appoint, and, immediately upon the appointment becoming effective, so far as this trust is concerned, the director of efficiency ceased to exist, and in his place and stead was a chancery receiver, the creature of the court.

That being so, it is at once apparent that, whatever the duties and privileges of the *Attorney General* with respect to being the adviser and counselor and attorney for the state officers and other departments of the state government, he had no such duties with respect to a chancery receiver appointed by a court of competent jurisdiction; and both under the letter and the spirit of the statute, and under the common law, the rights and duties of the *Attorney General* ended when the director of efficiency, by qualifying as a receiver, ended his connection with these affairs as an officer of the state, and assumed the duties of an officer of the court. We are satisfied that there was no error in refusing to name the *Attorney General* as the attorney for the receiver.

There seem to be no decided authorities touching upon this question which we have been discussing, which are of any aid or assistance, and we must therefore depend in the main upon reason for our support.

However, the supreme court of New Mexico, in the case of *State ex rel. Read v. Ryan*, 27 N. M. 651, 204 Pac. 68, had under consideration a statute which is quoted in the opinion, and from which we quote:

"Upon taking charge of any bank, the state bank examiner shall, as soon as possible, ascertain by a thorough examination of its affairs its actual condition, and if he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all of its creditors, he shall make a full and complete report of such examination and his opinion to the Attorney General who shall institute, forthwith, proper proceedings in the proper court for the purpose of having the state bank examiner appointed as receiver to take charge of such bank and wind up its affairs and the business thereof for the benefit of its depositors, creditors and stockholders. Such proceedings shall be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations. . . ."

It will be seen that, with reference to the appointment of a receiver, this statute is identical with our own; but, in providing that the receiver proceed under the provisions of the general incorporation laws for the winding up of insolvent corporations, the statute seems to furnish the machinery and authority by which a statutory receiver might act; and yet, notwithstanding this marked difference in the statute, the court said:

"The bank examiner is not by statute made receiver of insolvent banks, as he is in some jurisdictions, nor is he a receiver for an insolvent bank appointed by the executive department. Under this statute he applies to the court to be appointed receiver, and is not in any better position by virtue of his office as state bank examiner than any other applicant. We hold that, had the legislature intended the state bank examiner should be receiver of insolvent banks, it would have so provided, and a different question as to

558

the constitutionality of such act might arise. But the statute does not so provide. It requires the Attorney General to institute proper proceedings for the purpose of having the bank examiner appointed as receiver. The act does not attempt to control the discretion of the court in appointing a receiver, and under it the court may appoint or refuse to appoint the applicant as receiver.

"Whether the appointment of a receiver is a judicial act and is not within the constitutional power of the executive or legislative departments we do not decide, but hold in this case that the act which we are considering does not attempt to control the judicial discretion, nor encroach upon the judicial department of the state, but leaves the court free to act upon application of the bank examiner."

We express neither approval nor disapproval of what was decided by the New Mexico court. As we have already seen, the question of whether our statute makes mandatory the appointment of the director of efficiency as receiver is not before us and is not now decided; but the argument quoted, applied to the question which is before us, seems to lend support to our reasoning.

The case of *Union Savings & Investment Co. v. District Court of Salt Lake County,* 44 Utah 397, 140 Pac. 221, relied upon by *amici curiae,* is based upon a statute so different from ours as to render it of little aid here, and we think it unnecessary to analyze this or any other of the numerous authorities cited, all of which have been carefully considered.

■■ . With the foregoing as a premise, and in logical sequence, we now approach the question of the rights and duties of a duly qualified chancery receiver in charge of the liquidation of a corporation, and the power of the court over him. Relator Johnson complains of the portion of the order first made naming the attorneys to work with, and to serve him, and fur-

ther complains that the court refused to vacate that order and to grant him leave to select his own attorneys.

If we assume that he may raise these questions, the answer is found in the well-settled law relating to the control of a chancery court over a receiver appointed by it. Our statute, Rem. Comp. Stat., § 52, gives the superior court power, in subdiv. 5:

"To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto; . . ."

In *Willett & Oleson v. Janecke,* 85 Wash. 654, 149 Pac. 17, we have defined a receiver as the representative of the court, subject wholly to its orders and accountable to it. The spirit of what is there said is controlling here.

See, also, *Interstate Refineries v. Barry,* 7 Fed. (2d) 548; *Empire Trust Co. v. Aubrey,* 254 Fed. 281.

The trial court did not err in anything done in this respect.

Still bearing in mind that we have determined that, on appointment, relator Johnson became an ordinary receiver in chancery, the next question is: Did the court err in removing the receiver whom he had appointed, and may the receiver raise that question? Of course, the relator Johnson has a right to raise the question of statutory construction considered first herein, but, that question being decided against him, he is subject to the general rule and he concedes that rule.

In *State ex rel. Casedy v. Inter-State Fisheries Co.,* 36 Wash. 80, 78 Pac. 202, this court had before it an application for a writ of review questioning the order of the trial court in removing a receiver who had been

appointed by that court. Judge Fullerton, speaking for the court, said:

"We are of the opinion that no cause for issuing the writ is shown. No matter how much the receiver may feel aggrieved at the action of the court in removing him, he individually cannot complain. A party to the action has an interest in the personnel of the receiver, and it might be that, if the court should arbitrarily remove one and appoint another, he could have the orders reviewed in some way, but no such right belongs to the receiver. He may have orders relating to his compensation, his accounts, or his acts while receiver, reviewed, when he is aggrieved by such orders, but whether he personally shall or shall not continue as receiver is a question he has no right to litigate."

This is the general rule and is not seriously questioned by anyone, and we cite but a few of the many authorities. Clark on Receivers (2d ed.), vol. 1, § 692 (a) ; 23 R. C. L., p. 133, § 141.

From what we have said, it follows that the trial court did not err in any of the orders which are here for review, and that no ground exists for the issuance of a writ of prohibition.

It is therefore the order of the court that the various rulings of the trial court here reviewed are affirmed, that the alternative writ of prohibition is quashed, and the permanent writ is denied.

PARKER, MAIN, BEALS, and MITCHELL, JJ., concur.

MILLARD, J. (dissenting)—The questions presented in the three several writs before the court all turn on the interpretation that is to be given to the statute relating to the appointment of receivers for building and loan associations. If the receivership therein contemplated is the ordinary receivership of a court of equity, then the conclusion of the majority is correct and the several writs are properly denied.

In my opinion the proceeding is controlled by the statute. The directions contained in the very first sentence of the statutory provision (Rem. Comp. Stat., § 3735) respecting liquidation of such associations, are mandatory and cover every proceeding thereafter until final disposition, whether restored to the shareholders or dissolved. Otherwise, there was no purpose in enacting this law. The first sentence of the statute reads as follows:

"Whenever it shall appear to the state auditor [now state director of efficiency] that the affairs of any savings and loan association are in an unsound condition or that it is conducting its business in an unsafe and unlawful manner, the state auditor [director of efficiency] may direct the inspector of savings and loan associations to take possession of all books, records and assets of every description of such association and hold *and retain the possession of same pending the further proceedings herein specified."* (Italics ours.)

If my position is sound, then the power of the court appointing a receiver is limited by the statute, and the orders made by the court naming the attorneys for the receiver, discharging the receiver it had first appointed, and appointing another, and again naming attorneys for the new receiver, are erroneous, and should be reversed by this court.

While the statutes relating to the matter are not as full and complete as could be desired, in my opinion they are sufficiently definite to evince the intent of the legislature. As I view the statutes, they contemplate the appointment of a state officer as receiver by the court, and this officer is required to proceed in his own way to wind up the affairs of the association. The majority seem to affirm that there can be but two forms of receivership; that is to say, one appointed by the court and subject to the absolute control of the court, or a purely statutory receivership. With that I can

not agree. My view is that the statutes here in question contemplate a mixture of both; that is, the statute names the receiver, and requires the court to appoint as such receiver the person named, and that the interference of the court with the administration thereafter can only be where the receiver himself comes into the court and seeks direction as to some particular question, or where some one feeling aggrieved at the action of the receiver may go into the court and there have his complaint determined. If this is a proper construction of the statute, then, of course, the trial court had no right to name any employee of the receiver or dictate to him in any way the persons he should employ to assist him in his work.

It will be observed that the statute (Rem. Comp. Stat., § 3735) clearly defines the duties of the state officers, when it is discovered that a building and loan association is in an unsound condition. The director of efficiency is required to at once take possession of the association, ascertain the condition of the association, and give to the directors thereof twenty days in which to restore the affairs of such association to a sound condition. If the directors of the association fail during that time to make the restoration required, the director of efficiency is directed to report the facts to the *Attorney General* of the state, and it thereupon becomes the duty of the *Attorney General*

". . . to institute proceedings in the superior court of the proper county for the appointment of the director of efficiency as receiver, and for the dissolution of such association."

There is no alternative provision in the statute. The court's power is limited to the appointment of this particular officer as the liquidator of the association. The court is given no power to name any one else as such

receiver, and no power to remove the state officer from the receivership after he has once been appointed.

In obedience to the statutory mandate, the court on March 3, 1931, appointed the director of efficiency as receiver of the Puget Sound Savings and Loan Association. It will be presumed that the director possessed the moral and other qualifications essential to the performance of the duties of the office of receiver. By virtue of his office, the director became receiver. He would have the right to review the refusal of the trial court to appoint him in the first instance as receiver. It follows that the director may question and secure a review of his removal as receiver. It is possible to conceive that the statutory officer might so far mismanage the affairs of the receivership as to necessitate a change, and that the court, in such an instance, would have power to make the change; but no such question is presented here. He could not be removed upon the ground of incompetency or lack of integrity, unless specific charges were filed and the proof clearly and convincingly sustained the charges.

On the same date the director was appointed receiver, the court appointed two Seattle lawyers as attorneys for the receiver. Those attorneys are eminently qualified for that service. On March 6, 1931, the receiver filed a motion praying the court to vacate its order appointing those attorneys, and to permit him to appoint attorneys of his own choosing to represent him as receiver. It appears from affidavits and counter-affidavits read on the hearing on that motion that there was a disagreement between the appointed attorneys for the receiver and the receiver. The court summarily removed the director of efficiency as receiver, and appointed another in his stead. The court construed the act of the receiver in moving for authority to appoint attorneys of his own choosing, and the

refusal of the receiver to permit the attorneys appointed by the court to act for him, as constituting contemptuous disregard of the orders of the court, and sufficient justification for the receiver's removal; that the receiver thereby demonstrated his unfitness to perform the duties of the office of receiver. On the same day, the attorneys who were originally appointed were appointed as attorneys for the new receiver.

As I read the record, I fail to find any warrant for the removal of the director as receiver. To stigmatize one as unfit because his understanding of the statutes differed from that of the court, is unjustifiable. There is nothing indicative of the director's unfitness for the performance of the duties of receiver. The receiver has not been guilty of anything to merit the stigma placed upon him by the court. He was discharged solely because of a difference of opinion between himself and the attorneys the court assumed to appoint for him over the question of fees. The court was required in the first instance to appoint the director as receiver. He cannot be removed legally except for cause. No cause for his removal has been shown.

That the legislature had a purpose in naming the person who should be appointed the receiver of associations of this character, is made clear by an examination of the statutes. The first of the acts relating to such associations, which provided for the manner of their dissolution, contained much of the matter of the existing statute. It provided, however, that, after the twenty days' notice was given of its impaired condition, and the directors failed to restore the association to a sound condition, the state officer taking possession of the association should report the facts to the *Attorney General*, and thereupon it became the duty of the *Attorney General* to institute proceedings in the superior court "for the appointment of *a* receiver and

for the dissolution of such association." Laws of 1913, p. 342, § 20.

This power, it will be observed, was general. The court was not limited as to the person whom it might appoint. The statute first above quoted, which is the statute now in force, appeared in a subsequent amendment to the statute. There was a reason for this change. It was felt that the costs and expenses of winding up the association were unnecessarily large, and that these could be reduced if a state officer could be made receiver who would serve without compensation, other than the salary of his official position, and who would have an inducement to bring the affairs of the association to a conclusion as rapidly as possible.

There was, I think, another reason. The *Attorney General* is made, by the constitution and the statutes, adviser of all state officers. I think it was the intent of the legislature that, by appointing a state officer as receiver, the *Attorney General* would *ipso facto* become his adviser, and there would be eliminated the fees and charges of independent counsel. The legislature intended that the duties of conducting the affairs of such insolvent institutions should be imposed upon the state officials (the director of efficiency and the *Attorney General*) to the end that the loss incurred by those who placed their savings in such institutions would be minimized, and also to assure neutrality and impartiality. Whether these were considerations which the court would think of moment, is beside the question. It is enough that the legislature has so declared; and, since it has so declared, in my opinion the courts should give its declaration force.

Certain questions are asked in the majority opinion, apparently on the assumption that those questions involve the whole controversy. The first of these is: "Does the act of 1919 create a statutory receiver?"

In my opinion, as hereinbefore stated, this is not the question before the court. The real question is, does the statute create a modified form of receivership controlled in part both by the statute and by the court, and in which the court has only a subsidiary part? If the question were as the majority stated, I might concede that there is not in the statute anything in the language used, or anything necessarily implied by the language used, indicating a statutory receivership, but there is, in my opinion, abundance in the statute to indicate and to imply that a modified form of receivership was intended.

It is said in the majority opinion that the statute supplies no machinery for, or authority in, receivers to proceed by so much as a single step with the liquidation of the association without the direction and authority of the court. This I deny. The very fact that the state officer is appointed as receiver and directed to liquidate the corporation, implies power to take such steps as are necessary to work the dissolution. To liquidate a corporation presents no serious legal question. It is the duty of the liquidator to collect the assets of the corporation and disburse them to such persons as are entitled to them; and why any order of any court would be necessary to give him power so to do, when the very fact of his appointment implies the power, is not to me readily understandable.

True, questions can and will arise between the receiver and those indebted to the association, and between the receiver and those having claims against the association, as to the amount of the respective indebtedness or the respective claims, which will need to be determined by some judicial body. But questions of this sort arise in every case where there is an officer named to wind up a public corporation. All such questions are presented under the system adopted for

liquidating insolvent banks in this state. Rem. Comp. Stat., §§ 3266 to 3275, incl. Either party has always been allowed to resort to the court to determine the question.

Also, it is said that the liquidator has no power to give notice to creditors to present claims, and thereby cut off their right if not presented within a certain time. I answer this by saying that he has the same right in that respect that a court has. If the statute does not make the provision, the power is implied as well to a receiver as it is to the court; the only question in either case being whether a party subsequently complaining had reasonable notice of the requirement, and whether the requirement was in itself reasonable. This may be a judicial question, but, like the others mentioned in this dissent, the court can determine it when it is presented to it in a proper way. These are not such obstacles as require the court to ignore the plain mandate of the statute.

It must be remembered that, in all of these instances, the court is dealing with a creature of the legislature. Building and loan associations are of such a nature that they partake of a public character. They have their existence and they derive their powers from the grant of the legislature, and the legislature has the same power to provide the manner of their dissolution as it has to provide the method of their creation; and the courts, when these methods are indicated, should not disregard them.

For the foregoing reasons I dissent.

FULLERTON, HOLCOMB, and BEELER, JJ., concur with MILLARD, J.