Argued at Pendleton October 30; affirmed December 19, 1933;
rehearing denied January 16, 1934

# HANSEN *v.* HARRIS

(28 P. (2d) 649)

*Herbert C. Bryson,* of Walla Walla, Wash., for appellant.

*John F. Kilkenny,* of Pendleton (Raley, Raley & Warner and Alfred F. Cunha, all of Pendleton, and Arthur G. Cohen, of Seattle, Wash., on the brief), for respondent.

ROSSMAN, J. The Peoples State Bank of Walla Walla, Washington, is a Washington corporation authorized to conduct a banking business. One Higby Harris, on and prior to the 3d day of January, 1928, that being the time of his death, was the owner of 50 shares of the capital stock of that bank of the par value of $100 each. By the terms of his will, Harris bequeathed ten shares of this stock to the defendant, his widow, which she accepted. She subsequently received and accepted three dividends declared upon the stock, and through a proxy, exercised her right to vote the stock at the annual stockholders meetings. September 14, 1932, the bank by a resolution of its board of directors surrendered control of its affairs to the plaintiff who is the supervisor and examiner of banking for the state of Washington, having been appointed to his office pursuant to the provisions of section 10809, Remington's Compiled Statutes of the State of Washington. The plaintiff, upon investigating the condition of the banks affairs, found it to be insolvent and determined that it was necessary for the stockholders to make payment of the double liability attached to their ownership of stock by the Washington statutes which we shall later mention.

■ Since the defendant contends that the legislative enactments which authorized the supervisor of banking to levy the assessments in question are invalid, we shall now review these enactments, together with the provisions of the Washington constitution applicable to them. Article XII, § 11, Washington constitution, provides:

"* * * Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association accruing

while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

The provisions of the Washington banking law applicable to this controversy are 1917 Session Laws, chapter 80, and the amendments thereto. Section 35 of that act which is § 3242 Remington's Compiled Statutes of Washington, provides:

"The stockholders of every bank and trust company shall be individually and personally liable, equably and ratably, and not one for another, for all contracts, debts and engagements of such corporation accruing while they remain as stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares. Persons holding stock as executors, administrators, guardians or trustees, if such relation of trust shall appear in the stock certificate and on the books of the corporation, or as collateral security or in pledge, shall not be personally liable as stockholders, but the assets and funds in the hands of such trustees constituting the trust shall be liable to the same extent as the testator, intestate, ward, or person interested in such funds would be if living or competent to act and the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced by the examiner as soon after taking possession of any bank or trust company as in his judgment the same may be necessary. The failure of the stockholders of any bank or trust company immediately upon possession being taken by the examiner to make good all impairment of its assets shall be conclusive evidence that the enforcement of double liability is necessary."

Section 72 of the same act, being § 3279, Remington's Compiled Statutes of Washington, provides:

"Any bank or trust company may place itself under the control of the examiner to be liquidated as herein

provided by posting a notice on its door as follows: 'This bank (trust company) is in the hands of the State Bank Examiner.' Immediately upon the posting of such notice the officers of such corporation shall notify the examiner thereof by telegraph and mail. The posting of such notice or the taking possession of any bank or trust company by the examiner shall be sufficient to place all its assets and property of every nature in his possession and bar all attachment proceedings.''

Nineteen Hundred Twenty-three Session Laws (Washington), chapter 115, section 9, amends section 60 of the 1917 act (§ 3267 Rem. Comp. Stat.) which had (a) authorized the state bank examiner to direct banks to levy assessments upon their corporate stock whenever (1) the bank had committed any of the offenses mentioned in § 3266 Rem. Comp. Stat. and had hereby rendered its condition unsafe for the further pursuit of banking; (2) whenever the bank's capital or surplus was reduced below the required amount; (3) whenever it had suspended payment of its obligations; and (4) in the event of insolvency; (b) authorized the bank examiner to assume possession of any bank upon the occurrence of any of the above developments. The amendment added the following new provision:

''The board of directors of any such bank or trust company, with the consent of the holders of record of two-thirds of the capital stock, expressed either in writing or by vote of a stockholders' meeting called for that purpose, shall have power and authority to levy such assessments upon the stockholders pro rata and to forfeit the stock upon which any such assessment is not paid, in the manner prescribed in section 8 of this act.''

Section 70 of the 1917 act, being § 3277 Rem. Comp. Stat., provides that if the examiner possesses

assets belonging to the insolvent bank after he has discharged all claims of its creditors, he shall submit to a meeting of the stockholders for their choice the following two alternative methods for completing liquidation: (1) the stockholders may authorize the examiner to complete the liquidation; (2) they may themselves complete liquidation through an agent selected by themselves.

Since the enactment of the above statutes the office of bank examiner has been abolished and the authority previously possessed by him has been conferred upon an official known as the supervisor of banking. See §§ 10809 and 10893, Rem. Comp. Stat.

Section 69 of the 1917 act, being § 3276 Rem. Comp. Stat., provides:

"No receiver shall be appointed by any court for any bank or trust company, nor shall any assignment of any bank or trust company for the benefit of creditors be valid, excepting only that a court otherwise having jurisdiction may in case of imminent necessity appoint a temporary receiver to take possession of and preserve the assets of such corporation. Immediately upon any such appointment, the clerk of such court shall notify the state bank examiner by telegraph and mail of such appointment and the examiner shall forthwith take possession of such bank or trust company, as in case of insolvency, and such temporary receiver shall upon demand of the examiner surrender up to him such possession and all assets which shall have come into the hands of such receiver. The examiner shall in due course pay such receiver out of the assets of such corporation such amount as the court shall allow."

Article IV, § 6, Constitution of Washington, provides:

"The superior court shall have original jurisdiction * * * of proceedings in insolvency * * *."

It will be observed from a reading of the above statutes that they contemplate that the supervisor of banking shall take control of (1) insolvent banks; and (2) any bank upon its request. He may assume control of any bank (1) which has committed any of the offenses mentioned in § 3266 Rem. Comp. Stat. and thereby rendered its condition unsafe; (2) the capitalization or surplus of which is reduced below the required amount; and (3) which has suspended payment of its obligations.

The first contention argued by the defendant is that this statute conflicts with the provision of the Washington constitution above quoted which confers upon the superior courts original jurisdiction over "proceedings in insolvency". In *State v. Superior Court for King County,* 161 Wash. 550 (297 P. 774), the court said:

"Since time immemorial, courts of equity, under the common law, have had exclusive jurisdiction of causes seeking the appointment of receivers, and any statute designed to oust the courts of their jurisdiction would be in derogation of the common law and therefore to be strictly construed."

It will be observed, however, from a perusal of the above statutes that it is not necessary for a bank to become insolvent before the supervisor of banking may take possession of it. The extensive powers which the statute confers upon the supervisor enable him to assume control before insolvency develops with its ruinous consequences not only to the bank but also to the community in which it is located. Its real purpose is to forestall insolvency. In *Hanson v. Soderberg,* 105 Wash. 255 (177 P. 827), wherein the state bank examiner sought to enforce payment of the double liability attached to bank stock upon insolvency, the defend-

ant (a stock owner), contended that the examiner did not possess power under the statutes reviewed above to finally determine the necessity for making assessments, and the needed amount. He argued that a judicial inquiry was necessary before the examiner could make the assessment. It will be observed that the validity of the statutory provisions which enable the bank official to take charge of insolvent banks was, of necessity, involved in the above cause, for if a receiver can be appointed only by judicial action, the courts could readily have disposed of the cause by denying validity to the plaintiff's office. But the court declared:

"This question has also been decided against appellant's contention by the United States Supreme Court. Bushnell v. Leland, 164 U. S. 684; In Re Chetwood, 165 U. S. 443. In the case last cited, it is said: 'It has been so often decided that the authority vested in the comptroller to appoint a receiver of a defaulting or insolvent national bank, or to call for a ratable assessment upon its stockholders, is not open to objection because vesting that officer with judicial power in violation of the constitution, that we have recently declined to reexamine that question.' It is probable that in cases analogous in principle the decisions of this court could be resorted to as sustaining the proposition that the act does not confer judicial power upon the state bank examiner in violation of the constitution. At the risk, however, of having this opinion appear superficial we will not enter upon a review of these cases because to do so would extend the opinion, as it seems to us, unnecessarily."

It is true, as the defendant points out, that the court did not expressly mention Art. IV, § 6, of the Washington constitution, but it is clear from the above quoted portion of its decision that it had in mind the principle of law expressed in that portion of the constitution. In *Weatherwax v. Johnson,* 161 Wash. 80

(296 P. 182), the court recognized the validity of the statute under consideration by sustaining the powers of the state bank examiner to enforce payment of an assessment upon the stock of an insolvent bank levied by himself. See also *State ex rel. Coulee State Bank v. Farnsworth,* 125 Wash. 264 (215 P. 355). In *Re Liquidation of Cashmere State Bank,* 169 Wash. 258 (13 P. (2d) 892), the court held valid § 69 of chapter 80 of the 1917 act (§ 3276 Rem. Comp. Stat.) which authorizes the supervisor of banking to appoint receivers for insolvent banks. It expressly mentioned Washington constitution, Art. IV, § 6. The opinion written by Mr. Justice Steinert regarded the appointee of the state supervisor as a statutory receiver, while a dissenting opinion regarded him as "a non-judicial executive public officer". Both decisions recognized this portion of the statute as valid, and that of Mr. Justice Steinert expressed a belief that the statute does not deprive the courts of their power to appoint receivers but is merely an additional means of liquidating insolvent banks. It will be recalled that in *Hanson v. Soderberg,* supra, the court cited two decisions of the federal supreme court to sustain its holding that the power possessed by the state bank examiner is not judicial in nature. As early as 1869 in *Kennedy v. Gibson and Others,* 75 U. S. 498 (19 L. Ed. 476), the federal supreme court sustained the action of the comptroller in appointing a receiver of an insolvent bank, and ever since that time has recognized the validity of the comptroller's authority, as appears not only from the two federal decisions cited by the Washington court, but also from *Casey v. Galli,* 94 U. S. 673 (24 L. Ed. 168), and *United States ex rel. Citizens' Nat. Bank v. Knox,* 102 U. S. 422 (26 L. Ed. 216). It is true that the federal constitution contains no provisions similar to Article IV, § 6, of the

Washington constitution, but nevertheless the federal constitution recognizes the division of the powers of government into three departments in the same manner as does the Washington constitution, and it is evident that if the federal supreme court believed that the appointment of receivers is exclusively a judicial function it would have held the federal statute invalid. In *Hanson v. Soderberg,* supra, the court expressly mentioned the "striking similarity" between the provisions of the Washington statute which conferred upon the examiner control over insolvent banks with those of the federal statute. A somewhat similar declaration is contained in *Weatherwax v. Johnson,* supra. In *State Bank of Portland v. Gotshall,* 121 Or. 92 (254 P. 800, 51 A.L.R. 1200), wherein we compared our statute with the federal one, we said it is similar "if not, in fact, actually taken from it". In that case we recognized the validity of our statute and held that the decision of the superintendent of banks as to the necessity for an assessment and its amount "is conclusive". In *Bryan v. Bullock,* 84 Fla. 179 (93 So. 182), the court sustained the validity of a Florida statute which authorized the comptroller of that state to appoint a receiver for a bank upon the development of unfavorable contingencies similar to those enumerated in the Washington statute. The stockholder, faced with an assessment imposed by the statutory receiver, contended that the statute violated the sections of the Florida constitution which distributed the powers of state government into three departments, arguing that the appointment of a receiver is exclusively a judicial function. In sustaining the validity of the statute, the court pointed out that the conduct of the banking business is so closely identified with the general welfare that it is peculiarly subject

to the police power of the state, and that, hence, the state may exercise over it the extensive control authorized by the statute. The same result has been reached in Georgia. See *Felton v. Bennett,* 163 Ga. 849 (137 S. E. 264); *Coffin Bros. & Co. v. Bennett,* 164 Ga. 350 (138 S. E. 670) (affirmed in *Coffin Bros. & Co. v. Bennett,* 277 U. S. 29 (48 S. Ct. 422, 72 L. Ed. 768)). In *Jeffries v. Bacastow,* 90 Kan. 495 (135 P. 582), the court held valid a statute which authorized the banking commissioner of Kansas to appoint a receiver for any bank which he, upon investigation, found insolvent. In *Allen v. Prudential Trust Co.,* 242 Mass. 78 (136 N. E. 410), Chief Justice Rugg, in sustaining the validity of a Massachusetts statute, similar to the federal one, reviews extensively the precedents. We shall not mention the authorities cited in the defendant's brief except *Van Tuyl v. Carpenter,* 135 Tenn. 629 (188 S. W. 234), upon which she principally relies. *Hanson v. Soderberg,* supra, expressly declined to follow it. The other authorities cited by the defendant are based upon circumstances fundamentally dissimilar to those before us.

It is evident from the above that the federal supreme court has repeatedly held that the power vested in the comptroller to take charge of insolvent banks and administer their affairs through a receiver does not conflict with any constitutional limitation. The supreme court of Washington, as is seen from the above, has three times recognized the validity of the statute now under attack, and our statute which is similar to the federal and Washington statutes, as is seen from the above citation to our decision, has been applied by us as a valid item of legislation. The many decisions above cited are based upon the view that the public welfare demands close supervision over all banking institutions and that the police power sus-

tains these enactments. In fact, society today regards banks as quasi public institutions. The extensive legislation upon our statute books conferring comprehensive authority upon bank departments places banks under the supervision of the state's officials from the day they are organized. As long as a bank's officers maintain it in a sound financial condition the state does not assume direct control over its affairs, but when the bank commits an offense against statutes which are intended to preserve it in a sound condition, or when it approaches insolvency the state's officials may take direct and complete control over its assets. This is done not for the purpose of achieving the objective which is frequently sought by insolvency statutes; that is, the discharge of the debtor so that he can again resume his normal activities and become an economic asset, but for the purpose of facilitating the general welfare by securing for the depositors as speedily as possible a return of their funds. When the depositor has been paid, the state's interest in the corporation, as we have seen from our review of the Washington statutes, is terminated and the stockholders may again resume possession of its assets. It is our belief that the statute is fully sustained by the police power of the state. We find nothing in this provision which conflicts with Article IV, § 6, of the Washington constitution.

■ The second contention of the defendant submits that since the title of the act does not mention receiverships Article II, § 19, Washington constitution, is violated, which provides:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The title to 1917 Session Laws (Washington), chapter 80, which is the one which the defendant criticizes, is:

"An act relating to banking and trust business; the organization, regulation, management and dissolution of banks and trust companies, providing penalties and repealing certain acts and declaring an emergency."

The appointment of receivers is not the objective which the act seeks to achieve, but is merely one of the means or instrumentalities by which the real objective is attained; that is, the preservation of the solvency of banks and the protection of those who are interested in them. Hence, since the title mentions the dissolution of banks, it was not necessary to mention receiverships in the title. 59 C. J., Statutes, p. 814, § 394; 25 R. C. L., Statutes, p. 858, § 104; *Idleman v. State of Oregon,* 146 Or. — (27 P. (2d) 305). We find no merit in this contention.

■ The defendant argues that the power which this statute confers upon the supervisor of banks to (1) take charge of any bank, the affairs of which have reached the conditions mentioned in the statute; and (2) levy stock assessments, deprives the stockholder of his property without affording him the protection of due process of law guaranteed by the fourteenth amendment to the federal constitution. We have already cited and reviewed several decisions, including one of ours, which hold that the state may lawfully empower its bank supervisor to determine the amount which the stockholders of an insolvent bank must contribute upon their postponed liability, and to enforce payment of it. The liability to make this payment is a contractual one which the stockholder voluntarily undertook when he acquired his stock. We quote from

*Johnson v. Libby,* 111 Me. 204 (88 Atl. 647, Ann. Cas. 1916C, 681):

"Every person who voluntarily becomes a shareholder in a corporation thereby agrees to the terms of its charter, and assumes those obligations which the laws of the state creating the corporation impose upon such shareholders."

From 7 R. C. L., Corporations, p. 369, § 351, we quote:

"A stockholder by his subscription for stock, or by his acceptance of it, is deemed to agree with the corporation and its creditors that he will perform the obligations and discharge the duties imposed on stockholders by the constitution, the statutes, and the law then in force, and his liability to creditors is held to spring from this contract."

The principle above stated is further expressed and applied in *Schramm v. Done et al.,* 135 Or. 16 (293 P. 931); *Aldrich v. Anchor Coal Co.,* 24 Or. 32 (32 P. 756, 41 Am. St. Rep. 831); *Aronson v. Pearson,* 199 Cal. 286 (249 P. 188, 51 A. L. R. 1380); *Johnson v. Libby,* 111 Me. 204 (88 Atl. 647); and *Flash v. Conn,* 109 U. S. 371 (3 S. Ct. 263, 27 L. Ed. 966). The nature of the liability of the shareholder to make the second contribution is not substantially dissimilar to his liability to pay the original assessment (the purchase price of the stock). The latter, by virtue of his contract (made in conformity to law) he was required to pay at the time of the organization of the bank; the second he is required to pay at a time to be determined by the supervisor. Both payments serve the same purpose: They provide a margin of safety for the benefit of the bank's creditors. We find no merit in the second division of this contention. In *State Savings & Commercial Bank v. Anderson,* 165 Cal. 437 (132 P. 755, L. R. A. 1915E, 675) (affirmed in 238 U. S.

611 (35 S. Ct. 792, 59 L. Ed. 1488)) the courts rejected a contention similar to the one advanced by the defendant in the first division of the above contention. A California statute authorized the superintendent of banks to seize possession of any bank if he believed that it was in an unsound condition, and granted to any bank thus seized the privilege of applying to the California courts within 10 days of the seizure for an order directing the superintendent to show cause why he should not be enjoined from proceeding further. In sustaining the validity of this enactment, the California court said:

"The state owes to the public the duty not only of providing for supervision and examination of banks, but the added duty as a matter of public policy, if the conditions warrant, of summarily closing them up and terminating their existence. When the management thereof has brought them into a condition of unsafety or insolvency, the public interest demands that on this condition being ascertained they should not be permitted to further hold themselves out as responsible institutions or be permitted to remain in a position to do so. Police regulations are only effective when provision is made for their prompt and summary execution and summary seizure and liquidation of unsafe banks can fairly and reasonably be justified on the ground of immediate danger to the public welfare in further permitting their business continuance. In this view it cannot be said that initial seizure is not a fair and reasonable measure to be adopted to effect the protection of the public welfare which is designed by it, and, as the only limitation on the power the state imposed under the constitutional amendment is that the regulations it makes shall be of that character, no constitutional right of the appellant has been impaired by such legislation. Nor is the due process of law clause violated because such summary seizure is authorized to be made without action brought and judicial warrant for the taking. Due process of law does not necessarily imply a regular proceeding in a court of justice or

after the manner of such courts. As said in Davidson v. New Orleans, 96 U. S. 107, 24 L. Ed. 616: 'In judging what is "due process of law" respect must be had to the cause and objection of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for legal improvements, or some of these; and if found to be suitable or admissible in the special case it will be adjudged to be "due process of law;" but, if found to be arbitrary, oppressive and unjust, it may be declared to be not "due process of law".' "

We find no conflict between the statute and the fourteenth amendment.

■ The defendant, after citing many decisions which hold that the liability to make the additional contribution, upon insolvency, is contractual, argues that since she received these ten shares of stock by devise and not by purchase, she cannot be compelled to pay the assessment. We have already mentioned the fact that after she received the certificate for ten shares as a bequest from her husband's estate, she accepted payment of three dividends (aggregating $360) declared upon the stock, and exercised her right to vote at the annual meetings of the stockholders. In her answer she admits that she "took and received said certificate of stock as a legacy". This occured July 21, 1928. The bank did not deliver itself into the plaintiff's custody until September 14, 1932, and the assessment was not imposed until after that day. Ever since she received the stock she retained it and still possessed it at the time of the trial. The probating of the estate has long been completed. The circuit court's findings of fact declare the defendant to have been a stockholder of the insolvent bank ever since July 21, 1928.

In support of her contention that she cannot be held liable upon the assessment demanded by the plaintiff,

because she acquired the stock by bequest and not by purchase, she cites *Williams v. Cobb,* 242 U. S. 307 (61 L. Ed. 325, 37 S. Ct. 115) ; *Austin v. Strong,* 117 Tex. 263 (1 S. W. (2d) 872, 3 S. W. (2d) 425, 79 A. L. R. 1528) ; and *Burgess v. Seligman,* 107 U. S. 20 (27 L. Ed. 359, 2 S. Ct. 10). In the first of these three decisions several shares of bank stock owned by Laura Cobb were transferred by the executors of her estate after her death, with the approval of the probate court, to a trust fund created by her will in compliance with its provisions. Later the bank became insolvent and the comptroller levied an assessment upon its stock. The court held that neither the estate nor the heirs, those being the ones whom the comptroller had sought to hold responsible, were liable for payment of the assessment because they did not own the stock at the time the insolvency occurred. In the second decision the state bank official sought to charge the widow of a deceased stockholder with an assessment levied upon the stock. She had never received the stock nor exercised any acts of ownership over it. To the contrary, she had repeatedly renounced its ownership. The stock was worthless and had never been transferred out of deceased's name upon the bank records. In the third case the court held the defendants, who possessed some shares of stock as trustees, exempt from liability because of the provisions of a Missouri statute governing the stock. It will be observed that the facts in none of the above cases parallel those of our case. In the first case those whom the comptroller sought to hold liable, the estate and legatees, did not own the stock at the time of the insolvency nor at any later time. In the third case those whom the state official sought to charge with liability possessed the stock but were exempted from liability by a statute. The second case involved a widow, but she had never

accepted the stock nor permitted it to be transferred to her name. She had never accepted any dividends upon it and had never exercised the right to vote which it conferred. The facts demanded the conclusion that she was not the owner of the stock. In the course of its decision, the court enunciated the principle that the liability is contractual, as our present defendant contends, but by no means held that the liability attaches only where stock is acquired by purchase. It held the widow free from liability, not because she was the heir of her deceased husband, but because she was not the owner of the stock.

In *Turnbull v. Payson*, 95 U. S. 418 (24 L. Ed. 437), the court declared:

"Where the name of an individual appears on the stock-book of a corporation as a stockholder, the prima facie presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant."

See to same effect *Rankin v. Fidelity Trust Co.*, 189 U. S. 242 (23 S. Ct. 553, 47 L. Ed. 792); *William v. Stone*, 25 Fed. (2d) 831, and *Rust v. MacLaren*, 29 Fed. (2d) 288. From *Keyser v. Hitz*, 133 U. S. 138 (33 L. Ed. 531, 10 S. Ct. 290), we quote:

"We must not be understood as saying that the mere transfer of the stocks on the books of the bank, to the name of defendant, imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the bank. But if, after the trans-

fers, she joined in the applications to convert the savings bank into a national bank, or in any other mode approved, ratified or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks.''

In *Collins v. Caldwell,* 29 Fed. (2d) 329, a widow who had become owner of stock in a national bank under the last will of her deceased husband was held liable upon an assessment imposed by the comptroller after the bank had become insolvent, notwithstanding the fact that her name did not appear on the bank's records as a stockholder. See also *Western Pacific Ry. Co. v. Godfrey,* 166 Cal. 346 (136 P. 284, Ann. Cas. 1915B, 825), and Thompson on Corporations (3d Ed.) § 4901. The state of Washington deems responsible for the liability imposed by Art. XII, § 11 of the Washington constitution, those who own the stock at the time the insolvency occurs. *Duke v. Johnson,* 123 Wash. 43 (211 P. 710). When the executors of her deceased husband's estate handed to the defendant the certificate for these ten shares of stock she could have refused to accept it, as in *Austin v. Strong,* and thereupon no liability for any assessments would have attached itself to her. But she took the certificate and signed a receipt for it. She permitted her name to be entered upon the corporate records as a shareholder. She availed herself of the privileges which ownership conferred by accepting dividends and helping to select the corporation's directors through the exercise of the right to vote conferred by these 10 shares of stock. She thus accepted ownership of the stock and availed herself of the rights which ownership confers. Had any rights been withheld from her she could have enforced them in the

courts. Having accepted ownership of the stock she assumed the contractual duties which a shareholder owes to the state and to the corporation's creditors. How she became a stockholder—whether by inheritance, purchase, gift, or the fraudulent practices of others, is immaterial. She assumed the contractual obligations of a stockholder when she voluntarily accepted the certificates of stock, and the plaintiff, on behalf of the creditors, may now require her to perform her promises. She is not within any exempt class mentioned in § 3242, Rem. Comp. Stat. We find no error revealed by this contention.

■■ In her next assignment of error the defendant argues that she should have been permitted to offset against the plaintiff's claim the amount which the bank owed her upon her deposit account. She cites no authority which directly supports her contention. But in all similar situations that have come to our attention the courts have refused to allow a set-off, pointing out that the shareholder's claim as a depositor is against the insolvent corporation, while his debt is in favor of the creditors. The following authorities so hold: *Duke v. Force,* 120 Wash. 599 (208 P. 67, 23 A. L. R. 1354; *Williams v. Rose,* 218 Fed. 898; *Wingate v. Orchard,* 75 Fed. 241; *Hobart v. Gould,* 8 Fed. 57; *Wehby v. Spurway,* 30 Ariz. 274 (246 P. 759). See also 7 C. J., Banks and Banking, p. 517, § 108 and p. 779, § 630. The fact that the liability did not accrue until after the corporation had become insolvent especially indicates that the offset should not be allowed. Pursuing this contention further, the defendant argues that liability for the assessment is penal and cannot be enforced extraterritorially. We have already expressed our belief that the liability is contractual. In *Aldrich v. Anchor Coal Co.,* 24 Or. 32 (32 P. 756, 41 Am. St. Rep. 831), we held that the liability

of a shareholder in a California banking corporation to answer for its debts is contractual in nature and, therefore, can be enforced in an ordinary action at law in the courts of this state. *Howarth v. Angle,* 162 N. Y. 179 (56 N. E. 489, 47 L. R. A. 725) was an action in the New York courts by a receiver appointed by the Washington courts of an insolvent Washington bank to recover judgment against a shareholder for his equal and ratable proportion of a deficiency imposed by the Washington statutes. In permitting recovery, the court pointed out that it did so, not on any theory that the Washington statutes were in force in New York, but because the shareholder's contractual duty required him to discharge the statutory liability. In *Howarth v. Lombard,* 175 Mass. 570 (56 N. E. 888, 49 L. R. A. 301), the Massachusetts court permitted recovery under circumstances similar to those just mentioned. The general subject is discussed in 3 R. C. L., Banks, p. 418, § 45. In *Gile v. Duke,* 5 Fed. (2d) 952, the court declared: ''The banking officer of the state is the statutory successor of the bank for the purpose of winding up its affairs and may sue in any jurisdiction.'' It is evident that this contention lacks merit.

■ In her next assignment of error the defendant argues that the court erred when it failed to find that one C. S. Moody, who was supervisor of banking for the state of Washington, when this action was instituted by him, was guilty of a contempt of court by instituting another action shortly after the defendant filed her answer, in the state of Washington, based upon the same cause of action that constitutes the foundation of this action. The commencement of the Washington action was accompanied by the levy of a writ of attachment upon property owned by the defendant in the state of Washington, including her deposit

in the insolvent bank. When the Washington action was instituted the defendant moved that Moody be required to show cause why his conduct should not be deemed a civil contempt of our courts. The circuit court's refusal to take the requested action is assigned as error. The contempt proceedings bear the same caption as those of this cause and make no mention of the state of Oregon as a party. We pointed out in *State ex rel. Hewson v. Hewson,* 129 Or. 612 (277 P. 1012), that even proceedings for a civil contempt should be conducted in the name of the state of Oregon, ex rel. the prosecuting party. Moreover, C. S. Moody, who was bank supervisor when the contempt proceedings were instituted and who was the official who commenced the Washington action is no longer the incumbent of that office and is no longer the plaintiff in this action. Even if we should deem him guilty of a contempt that could avail the plaintiff nothing because he is now a stranger to the cause before us. We know of no reason why the institution of the Washington action should be deemed a contempt of the courts of this state. We are still free to act and to make any disposition of this cause which our laws demand. The Washington action, with its accompanying writ of attachment, was apparently commenced for the purpose of preserving property located in that state so that it would be available to satisfy any judgment eventually obtained. Multiple suits are at times required where a debtor cannot be found in the state where his property is located. No bad faith is charged against the plaintiff by the defendant. We know of no reason whatever for declining to affirm the circuit court's judgment because of the action commenced in the Washington courts against this plaintiff.

■ Finally, the defendant charges that error was committed when the court declined to bar counsel, other

than the attorney general of Washington, from prosecuting this action. Art. III, § 21 of the Washington constitution, provides:

"The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law."

Section 112 Rem. Comp. Stat. provides:

"The powers and duties of the attorney general in relation to actions and proceedings in the courts shall be: * * *. 2. To institute and prosecute all actions and proceedings for or for the use of the state, which may be necessary in the execution of the duties of any state officer. 3. To defend all actions and proceedings against any state officer in his official capacity in any of the courts of this state or the United States."

In *Kennedy v. Gibson*, 75 U. S. 498 (19 L. Ed. 476), the court in the following words disposed of a similar contention based upon a similar statute:

"The receiver is the agent of the United States, and according to the 56th section of the Act, this suit should have been conducted by their attorney. But this provision is merely directory. The question which arises is between the United States and its officers. The rights of the defendants are in no manner concerned, and they cannot be heard to make the objection, that this duty of the local law officer of the government has been devolved upon another. It is to be presumed that there were sufficient reasons to warrant this departure from the letter of the law."

We find no reason in this contention for disturbing the judgment of the circuit court.

The above disposes of all contentions advanced by the defendant. We have not mentioned all of the authorities cited in the exhaustive brief of defendant's counsel but all of them have received careful study.

Affirmed.

RAND, C. J., BEAN, BELT and KELLY, JJ. concur.